## W. B. BROCK, Appellee, v. JONES COUNTY, Appellant.

**Poor persons:** MEDICAL ATTENDANCE: EMPLOYMENT BY TOWNSHIP TRUSTEES. Where two township trustees met at the call of the township clerk and agreed with the plaintiff, a physician, that he should care for an injured poor person and that they would approve the bill for services, there was a sufficient meeting and employment of such physician.

**Same:** CERTIFICATION OF CLAIM: WAIVER OF DEFECTS. The statute providing for certification. by township trustees of claims for care of the poor, and for presentation to and payment by the county, does not absolutely require that a claim shall be certified by the trustees 'to authorize its payment by the county; and a defect in a certificate is waived when the supervisors make no objection thereto and pass upon the claim on its merits.

**Same:** CONTRACT FOR MEDICAL ATTENDANCE: ENFORCEMENT: ESTOPPEL. In this action the plaintiff, a physician, was a member of a county medical society which had the contract with the county to furnish medical attendance to the poor, and had received his *pro rata* share of sums paid the society by the county. *Held,* in seeking to enforce a personal contract with township trustees for services rendered a poor person, that he was estopped to claim that the contract between the county and society was invalid because not let to the lowest bidder, or because no bond was given, or because the society's proposition did not meet the publication for bids, or was not accepted within the proper time.

**Same:** SCOPE OF CONTRACT. It is the duty of a county to provide care and medical attendance for all poor persons, and a contract with a county to that end includes a poor person in the county, although a nonresident of the State.

*Appeal from Jones District Court.*—HON. F. O. ELLISON, Judge.

THURSDAY, JANUARY 13, 1910.

ACTION to recover compensation for medical services rendered by plaintiff, who is a physician, to one Chas. Jones, who, it is claimed, was a pauper who had been injured through a fall from a circus train which was passing through defendant county. The case was tried to a jury, resulting in an instructed verdict for plaintiff, and defendant appeals.—*Reversed.*

*C. J. Cash,* County Attorney, and *Herrick, Cash & Rinehart,* for appellant.

*B. H. Miller* and *Remley & Remley,* for appellee.

DEEMER, C. J.—Plaintiff is a physician and surgeon, living and practicing his profession at the town of Olin, in Jones County. In the year 1906 a negro by the name of Chas. Jones fell from a circus train which was passing through the state at or near the town of Olin, and as a result both his legs were crushed and mangled. The injured man was without means, and may properly be said to have been a pauper. Plaintiff's attention was called to the injured man, and he immediately notified the township clerk, and asked him to call a meeting of the township trustees in order that the man might be taken care of. It is claimed that a meeting of the trustees was called, that two of the members met with the clerk, and that as a result thereof plaintiff was directed to take charge of the man and render him such services as he thought were necessary, and that they, the trustees, would certify his bill for such services to the board of supervisors of the county. The trustees

found a place where the man could be kept, and plaintiff rendered the services for the value of which he sues. The man was kept and treated in Jones County for some six or seven weeks, and until his father came from Cleveland, Ohio, and took him to his home. It sufficiently appears that the injured man was a nonresident pauper, that plaintiff performed the services claimed, and that the verdict returned is not more than a fair compensation for the services rendered. Defendant claims, however, that it is not liable, for the reason that it had a contract with the Jones County Medical Society, of which plaintiff was a member, for the medical care of paupers within the county, that plaintiff's bill was never legally certified or presented to the board of supervisors, and that in no event was it liable for the services rendered by plaintiff. Many points are relied upon for a reversal; but the argument is confined to a few propositions, and to these, and these only, will we direct our attention.

The statutes material to our inquiry read as follows: "A person coming from another state, and not having become a citizen of nor having a settlement in the state, applying for relief, may be sent to the state whence he came, at the expense of the county, under an order of the district court or judge; otherwise he is to be temporarily relieved in the county where he applies." Code, section 2225. "The township trustees of each township, subject to general rules that may be adopted by the board of supervisors, shall provide for the relief of such poor persons in their respective townships as should not, in their judgment, be sent to the county poorhouse. . . . The relief may be either in the form of food, rent or clothing, fuel and lights, medical attendance, or in money, and shall not exceed two dollars per week for each person for whom relief is thus furnished, exclusive of medical attendance. . . . When medical services are rendered by order of the trustees or overseers of the poor, no more shall be charged or paid

therefor than is usually charged for like services in the neighborhood where such services are rendered." Code, section 2230. "All moneys expended as contemplated in the two preceding sections shall be paid out of the county treasury, after the proper account rendered thereof shall have been approved by the boards of the respective counties, and in all cases the necessary appropriations therefor shall be made by the respective counties." Code, section 2232. "The trustees in each township, in counties where there is no poorhouse, have the oversight and care of all poor persons in their township, and shall see that they receive proper care until provided for by the board of supervisors." Code, section 2233. "The poor must make application for relief to the trustees of the township where they may be, and, if the trustees are satisfied that the applicant is in such a state of want as requires relief at the public expense, they may afford such relief, subject to the approval of the board of supervisors, as the necessities of the person require, and shall report the case forthwith to the board of supervisors, who may continue or deny relief, as they find cause. The board of supervisors may examine into all claims, including claims for medical attendance, allowed by the township trustees for the support of the poor, and, if they find the amount allowed by said trustees to be unreasonable, exorbitant or for any goods or services other than for the necessaries of life, they may reject or diminish the claim as in their judgment would be right and just, and this act shall apply to all counties in the state, whether there are poorhouses established in the same or not. This act shall apply to acts of overseers of poor in cities as well as to township trustees." Code, section 2234. "All claims and bills for the care and support of the poor shall be certified to be correct by the proper trustees and presented to the board of supervisors, and, if they are satisfied that they are reasonable and proper, they shall be paid out of the county treasury. . . ." Code, section 2235. "The

board of supervisors may make contracts with the lowest responsible bidder for furnishing any or all supplies, medical attendance or services required for the poor, for a term not exceeding one year, or it may enter into a contract with the lowest responsible bidder, through proposals opened and examined at a regular session of the board, for the support of any or all the poor of the county for one year at a time, and may make all requisite orders to that effect, and shall require all such contractors to give bonds in such sum as it believes sufficient to secure the faithful performance of the same." Code, section 2238. "The word 'poor' and 'poor person' as used in this chapter shall be construed to mean those who have no property, exempt or otherwise, and are unable, because of physical or mental disabilities, to earn a living by labor; but this section shall not be construed to forbid aid to needy persons who have some means, when the board shall be of opinion that the same will be conducive to their welfare and the best interests of the public." Code, section 2252. Counsel make reference to section 2570 of the Code, but, as that clearly has to do with the care of infected persons, it is not regarded as material to any issue in the case.

Defendant's real contentions on this appeal are (1) that plaintiff was never employed by the township trustees; (2) that no proper certificate of his employment was ever filed with the board of supervisors, and that the bill filed by him was not certified to by the trustees; and (3) that as it had a contract with the medical society, of which plaintiff was a member, for the care and support of the poor, plaintiff cannot recover. These matters will be considered in the order stated.

I. The testimony does not support defendant's first contention. It appears from the record that the township clerk notified the township trustees, that two of the members appeared, and with the clerk took up the matter of caring for the injured man, and it was then agreed that

the trustees should provide a place for the man, and that

1. Poor persons: medical attendance: employment by township trustees.

plaintiff render such medical services as he thought were necessary, and that they would sign and approve his bills. This was a sufficient meeting of the trustees, and a sufficient basis for plaintiff's claim, unless there be something in the other defenses pleaded.

II. The certificate to plaintiff's bill was made in the year 1907, and it was in the following form:

"State of Iowa, Jones County—ss.

"We, the undersigned, who were the trustees of Rome Township in the county and state aforesaid, in the year 1906, do hereby certify that W. B. Brock was employed by us and that he rendered the services above described at our order and request, and we further certify that said services consisted of the amputation of both legs of one Charles Jones and also medical services rendered and that said services were and are of the value of $175.00. We further certify that services were rendered by the claimant by our official order and request.

"............,
"............,
"............,
"Trustees of Rome Township,
Jones Co., Iowa."

(The above was in typewriting in middle of paper.)
(Here was a blank space for several inches.)

"We, the Trustees of Rome Township, recommend payment of the above bill."

(The above was in print at bottom of page.)

"............,
"D. C. Easterly,
"J. L. Streeter,
"Trustees."

Easterly and Streeter were not trustees when they signed this certificate; their terms of office having expired on the 1st of January in that year. Neither did they act together nor as a board in making the certificate, for the very good reason, if for no other, that they could not so meet, as their terms of office had expired. After filing his claim, plaintiff was twice before the board of supervisors with reference thereto, and at neither of these times nor at any other did the board or any of the members thereof raise any objections to the sufficiency of the certificate of the trustees, either in form or substance. On the contrary, they bottomed their action in disallowing the claim solely upon the ground that they had a contract with the medical society for the doing of the work. This conduct is relied upon by plaintiff as a waiver of a proper certificate from the trustees as provided in section 2235 of the Code, before quoted.

We are constrained to hold with plaintiff upon this proposition. The statute referred to is not mandatory in the sense that such certificate is essential to an allowance of a claim by the board. In other words, payment or allowance by the board of a claim which is defectively certified cannot be said to be illegal or unauthorized. This point is definitely ruled by *Bradley v. Delaware Co.,* 57 Iowa, 552; *Collins v. Lucas Co.,* 50 Iowa, 448. From the opinion in the former case we quote the following: "The want of the trustees' certificate to the claim when it was presented to the board would have justified the board in refusing to consider it. This, we must presume, they well knew. They nevertheless proceeded to consider it. They passed over the fact that there was no certificate, and certainly treated it for the time as immaterial. If they had refused to consider the claim for want of a certificate, the claimant would have been advised of its necessity, and might have supplied it. But the board had other grounds

2. SAME:
certification
of claim:
waiver of
defects.

for disallowing the claim, as far as they did disallow it,
and they acted upon those grounds with the view which the
board took of the claim.  The trustee's certificate was, in
fact, immaterial.  There is no pretense that they would
have been bound by it, if it had been supplied, and if
they were satisfied, as they claim to be, that the claim, so
far as they disallow it, ought to be disallowed upon merits,
it would have been their duty to disallow it."  There is
nothing, then, in defendants' second proposition.

III.  Defendant's main defense is bottomed upon a
contract which it entered into with the Jones County Med-
ical Association, entered into in the following manner:

3. SAME:
contract for
medical
attendance:
enforcement:
estoppel.

The board of supervisors advertised for bids
for furnishing medical attendance to the
poor, as provided in section 2238 of the
Code.  The Jones County Medical Society,
of which plaintiff was a member, had theretofore passed a
resolution to the effect that no member of the society could
bid on county poor practice.  Pursuant to the notice sev-
eral bids were received, none of which, save the one we shall
presently refer to, covered the entire county.  The secre-
tary of the medical society for and on behalf of said society
presented the following to the board:  "Anamosa, Iowa,
March 26, 1906.  We, the doctors of Jones County, agree
to do the poor practice of said county including Cascade
for the sum of $1,525, the county to pay for one-half (½)
antitoxine when used on county cases.  Harry W. Sigworth,
M. D., Sec. Jones Co. Med. Society."  The board of
supervisors took up the bids, and its records show the fol-
lowing with reference thereto:  "On motion of Mattheissen
the bid of the Jones County Medical Assn. agreeing to give
medical and surgical attendance and treatment including
medicines and one-half of the antitoxine used to the poor
of Jones County, Iowa, for the year commencing April 10,
1906, and ending April 10, 1907, was accepted for the
sum of $1,525.00.  Carried."  Thereupon the medical so-

ciety made the following entry upon its journals: "Made contract with board of supervisors at our April meeting for $1,525.  Sublet contract for Washington township and that part of Richmond township lying within a two-mile radius of Cascade to Dr. Finley for $25.00."  Some of the matters which we shall now state are not shown as clearly as they might have been, and some of them were perhaps not shown at all; but, as defendant offered to show them, and this clearly appears from the record, we shall, for the purposes of the appeal, treat them as appearing in the record.  This is because of the fact that, if not shown, it was because of error of the court in refusing to admit the testimony, which in itself would be ground for a reversal.

Plaintiff was a member of the medical society when the arrangement with the county was made.  Various members of the society rendered service under the arrangement, and the county paid the society therefor.  As the sums were received, they were prorated among all the members; plaintiff receiving his share thereof.  When the arrangement was made with the board, the secretary of the association furnished the county authorities with a list of the members of the society, showing their residence or place of business, and among these was that of plaintiff.  To avoid this, plaintiff makes two contentions.  The first is that the contract or arrangement with the board of supervisors was contrary to public policy, illegal, and void because the contract was not let to the lowest bidder, because no bond was given to secure the performance of the contract, because plaintiff and the other members of the society had undertaken to create a trust or monopoly, and, second, because the contract did not cover services performed for a nonresident pauper.  The medical society was not an incorporated society, but purely a voluntary association.  Plaintiff, however, was a member of it, and no claim is made that the secretary of the association was not au-

thorized to submit the bid for and on behalf of the society. At a regular meeting of the society, the proposition, as accepted by the board of supervisors, was fully ratified by the society. Having participated in all the acts of which he complains, having received some of the fruits of the contract or agreement, having induced and been a party to the contract, plaintiff is in no position, after profiting thereunder, to say that the contract is illegal, to disavow and disown it, and claim that he should be reimbursed for services contemplated by the contract as if it had never been made. Moreover, plaintiff is estopped from saying that the contract is illegal because not let to the lowest bidder, or because the society filed no bond as the statute requires. The contract was not void, although not let to the lowest bidder and the failure to require a bond did not invalidate it. No such collateral attack as is here attempted will be tolerated or recognized.

Again, the plaintiff can not be heard to say that the bid or proposal did not meet the publication for bids, or was not accepted at a proper time. It was accepted and agreed to by both parties; and plaintiff, after having recognized it and profited therefrom, can not in such an action as this repudiate it. No one will be permitted to take advantage of his own wrong; and to permit plaintiff to recover on such a showing as is here made would be obnoxious to every principle of law or morals with which we are familiar. See *Peck v. Burr,* 10 N. Y. 294; *Sampson v. Shaw,* 101 Mass. 145-151 (3 Am. Rep. 327); *Arnot v. Pittsburg Co.,* 68 N. Y. 558 (23 Am. Rep. 190); Beech on Contracts, 1894, and cases cited; *McNulta v. Bank,* 164 Ill. 427 (45 N. E. 954, 56 Am. St. Rep. 203); *Bowman v. Phillips,* 41 Kan. 364 (21 Pac. 230, 3 L. R. A. 631, 13 Am. St. Rep. 292); *Short v. Mining Co.,* 20 Utah, 20 (57 Pac. 720, 45 L. R. A. 603); *Richardson v. County,* 59 Neb. 400 (81 N. W. 309, 48 L. R. A. 294, 80 Am. St. Rep. 682).

There is no merit in any of the first claims relied upon by plaintiff to defeat the contract or agreement. It is said, however, that the contract had no reference to non-resident paupers, and that plaintiff may recover for services rendered them. There might be some basis for this claim if the statute read as it did in Code 1873, section 1369, or Revision 1860, section 1393. The statute as it now reads (Code, section 2238) seems to cover all poor persons or all poor of the county, no matter where resident. And the provision upon which plaintiff relies for a recovery relates to all poor persons in the township. It is no broader, as we think, than the one under which the contract was made. If no broader, then plaintiff, under his theory of the case, is not entitled to recover at all. The statutes taken together seem to indicate that the county is to take care of all the poor, although they may have no legal settlement therein. The remedy is to recover the amount expended from the county of settlement. We shall not set out these statutes, for they are familiar to the profession. If the poor person is a nonresident of the state—and whether he be a resident of another state or country is immaterial—it is the duty of the county where he is found to take care of him as a poor person under the statutes hitherto quoted. The medical society undertook to take care of the poor practice in the county, and to this agreement plaintiff should be held. When the board has employed physicians to do the work, the trustees can not employ another or others to do the work, and they certainly can not employ one who is bound to do it and give him an enlarged compensation. *Gawley v. Jones County*, 60 Iowa, 159; *Mansfield v. Sac County*, 59 Iowa, 694. If a poor person has no settlement, he must be deemed to belong to the county where the relief is furnished. *City of Clinton v. Clinton County*, 61 Iowa, 205.

In that case the pauper had no settlement within the

4. SAME: scope of contract.

state, and it was held that the county must nevertheless take care of him as one of its own poor. The fact that the poor person treated in this case had a settlement in the state of Ohio is the same as if he were domiciled in a foreign country; and he was a poor person of the defendant within the meaning of the law. This being true, his treatment was covered by the contract under consideration, and the township trustees had no authority to make the county liable to plaintiff under the circumstances disclosed by the record. The defendant county has never repudiated or refused to recognize its contract with the medical society, and plaintiff is in no position to do so for his own benefit. He never sought to repudiate it or withdraw from its operation until this action was brought, and he does not seek to do so now, save as it will profit him by so doing, and this pleading of illegality in the contract is not interposed for the public good or because of a change of heart. The *locus poenitentiae,* as it is sometimes called, repentance and withdrawal from the illegal transaction, does not sufficiently appear. There is nothing in *Lacy v. Kossuth County,* 106 Iowa, 16, or *Miller v. Des Moines,* 143 Iowa, 410, which runs counter to the views herein expressed.

It necessarily follows from what we have said that the trial court was in error in its rulings on the admission and rejection of testimony and in directing a verdict for plaintiff.

The judgment must therefore be, and it is, *reversed.*