SCHOOL TOWNSHIP OF SEVENTY-SIX of Muscatine County, Appellant, v. ARTHUR NICHOLSON, Treasurer, et al., Appellees.

No. 44918.

OCTOBER 24, 1939.

292

Thompson & Thompson, for appellant.

Harold E. Wilson, for appellee school district.

Frank Drake, for appellee county treasurer.

BLISS, J.—The Evangelical Lutheran Society for Christian Charities is a charitable institution operating a home for the aged and infirm, and also a home and elementary school for minor children, who have no suitable homes or proper parental supervision. The institution is in the plaintiff school township, and is just outside the corporate limits of the city of Muscatine, and the defendant school district. The school is a private one, and not a part of the public-school system, although the pupils, after completing its course of eight grades, take the examination given by the county superintendent of schools, the same as eighth grade pupils from the public schools, and if they pass the test, they are given high school admission certificates the same as other eighth grade pupils. There is no high school in the appellant school township, and its eighth grade graduates attend the high school in the appellee school district, or one in some neighboring school district. For several years graduates from the school of the Lutheran Society have attended the high school of the appellee. The present controversy arises from the fact that, commencing in September, 1930, graduates from this school have been in continuous attendance at the high school of the appellee, until June, 1937, and, although nonresidents of the appellee district, no one has paid any tuition for any of these nine pupils. Each of these took the high school entrance examination, given by the county superintendent, and each received the high school admission certificate of the superintendent, good anywhere in the state. Each of these certificates stated that the person named therein was a graduate of the Lutheran school, and was entitled to enter any accredited high school at the expense of the district of his residence. The statutory provisions having to do with pupils attending high schools, in other districts, when there is no high school in their own district, are found in sections 4275, 4276, 4277 and 4278 of the 1935 Code.

The amount of tuition which the appellee district claims from the appellant school township for the nine pupils, for said period, from September 1930 to June 1937, is $1,720.13. The claim of the appellee is based upon the fact that these pupils, notwithstanding they were all inmates of the home and graduates of the school of the Lutheran Society, were nevertheless residents of the appellant school township, and that the latter was therefore obligated, under the statutory provisions, to pay the tuition to the appellee district. The appellant denied the liability, and refused to pay, on the ground that the pupils were not residents of the school township. Because of this refusal the appellee district, as authorized by section 4278, filed its itemized and certified claim for tuition with the county auditor, who ordered the county treasurer to transfer the amount of the account from the funds of the appellant to those of the appellee district. Upon being notified by the treasurer of his intention to make the transfer, the appellant instituted the injunction suit.

The appellant urges upon us the following grounds for reversal:

1. The pupils for whom the tuition was charged were not legal residents of the appellant school township while attending the high school at Muscatine.

2. The appellant had exclusive original jurisdiction to determine the residence of said pupils.

3. The appellee school district's failure to comply with the provisions of Code sections 4275 and 4276 barred recovery of the tuition.

4. The claims for tuition for the period between September, 1930 and June, 1932, amounting to $500, were barred by the statute of limitations (section 11007), since more than five years had elapsed between the date of the last claim, and the certification of said claim to the county auditor, on October 5, 1937.

5. The court erred in holding that no part of the claim was payable by the treasurer of the state of Iowa, under the provisions of chapter 123, Acts of the Forty-seventh General Assembly.

I. The first ground is the one most strenuously contended for by appellant. It is largely a fact question. The record dis-

closes that this Lutheran institution has been operating for 20 years or more. During its earlier years it cared for from thirty to forty children, but during the last few years the number has increased to approximately one hundred. They are mostly neglected children, who have lost one or both parents, or who have had no proper parental care, because of poverty, alcoholic intemperance, or other misfortune in the family. The nine children involved here come within some of these classifications. These children come from Kansas, Illinois, and other counties in Iowa. In one case a Kansas court placed the child and his brothers and sisters in the custody of a Lutheran congregation, and the latter placed the children in the home of the Lutheran Society. It was the understanding that the Kansas church would help in the support of the children, but they soon became charity cases. Another child was placed in the home by a probation officer of Woodford county, Illinois, under an order of a court that the county would pay two dollars a week for her care, which amount was so paid until she graduated from the Muscatine high school. Others of the children in question were placed in the home on verbal or written applications of a parent or relative, with a promise to pay two or three dollars a week for the child's support. In each instance the child very shortly became what the institution denominated a "charity case", because the promised payments were not made. Nevertheless the Society continued to care for the child. In each of the written applications was a provision that the child when received into the home should be under its guardianship, and that prior to its acceptance proper affidavits and releases to that effect should be given to the officers of the home. The guardianship was to terminate when the child reached "legal age". The Society considered the age of 18 years as the legal age, and uniformly a child was not kept beyond that age. The application also provided that the institution reserved the right to return a child to its parents, relatives or guardian, at any time, with relief from any further responsibility. While there were few, if any, such affidavits or written releases for any of the nine children, there were verbal releases in each instance. Reverend William Klein was the minister and the superintendent of the institution for over 17 years, and during all of the time in question. He was a witness for the appellant, and testified respecting each

of the nine children, and the circumstances under which they came into the home. He testified that there was either a writing, or verbal agreement or understanding respecting these children ''that they are apprenticed to us and that we are to exercise sole parental care and jurisdiction over them during the time they are here.'' He further testified: ''The children we take there have no other home or parental supervision.'' Of all of the nine children, he testified: ''They had no other home in the world than the Lutheran Home.'' So far as the record shows each child remained at the home from the time he or she entered it, at ages from 5 to 12 years, and remained there until they were 18 years old, and they went out in the world to earn their own living. There is no evidence that any of them returned to the home from which he left. The only reasonable conclusion to be reached from a reading of the entire record is that each child either had been abandoned, or was abandoned by those whose natural obligation was to care for it, shortly after entering the home, and that its sole care, custody and control, was completely surrendered to this benevolent Lutheran organization.

The first question about the tuition referred to in the record appears in a letter from the secretary of the appellant board, to the board of education of Muscatine, enclosing a check for $800, for the high school tuition of all the appellant's pupils ''with the exception of three students from the Lutheran Orphans Home. At our annual meeting there was a committee appointed to investigate the legality of their residence there. If they find we are responsible for their tuition I will mail you a check for the balance of your bill which is $250.00.''

Whether this balance was ever paid does not appear. It is not included in the amount now claimed. There was no further written communication from the appellant. A statement of the tuition accrued was sent to the officers of the appellant, once each year, at least, from 1931 on. On December 10, 1935, the secretary of the appellee wrote a letter to the secretary of appellant, stating that the State Superintendent of Public Instruction had notified the appellee that the tuition should be paid by appellant, and further stating:

''Is it your wish to have these pupils continue in our high school, and will your board sign the cards to become responsible

for their tuition, or shall we immediately exclude them from the high school due to the fact that your district will not pay the tuition?

"We have within our rights the power to collect the tuition from our County Treasurer, but do not like to force this payment from him if you do not care to become responsible for these pupils. Of course for the time they have attended you will have to be responsible, but it is up to you and your board to say whether you wish to have them continue in our school.

"May I hear from you immediately?"

On receipt of the letter appellant's secretary called upon appellee's secretary, but what was said or done does not appear. The president, secretary, and another member of appellant's board were witnesses. The secretary testified:

"The payment was withheld for the reason that we were not sure whether they were residents. That is the only reason we have ever given the school district of Muscatine for not paying the tuition. And that is why the tuition for those pupils whose names are attached to the petition have not been paid."

The other two members testified to the same effect, and also that the board had at all times denied any liability for the tuition and had verbally told members of the appellee board so, on different occasions, because they thought these pupils were not residents of the appellant district. So far as the record shows the appellant never, by resolution, or any other official record or action, denied liability or refused to pay this tuition. We mention this because of appellant's claim that the appellee should have appealed from the appellant's refusal to pay, to the county superintendent.

It appears to us that these pupils were clearly residents of the appellant district. In Salem Independent School District v. Kiel, County Auditor, 206 Iowa 967, 969, 221 N. W. 519, 520, the facts and the proceedings were, in general, almost identical with the facts and proceedings in this case. There the pupils were children apprenticed to a charitable institution in a school district which had no high school. They attended the high school in the plaintiff district. No tuition had been paid and an action in equity was brought to compel the county auditor to perform his duty in directing a transfer of funds from the

defendant district to the plaintiff district. The relief was granted, and in affirming, this court said:

"The institute is to be the permanent home of the children in question until they attain their majority. They have no other home. They are, therefore, we think, unless excluded by the fact that they are cared for in a charitable institution, clearly residents of Chestnut Hill District. Mt. Hope Sch. Dist. v. Hendrickson, 197 Iowa 191 [197 N. W. 47]. See, also, Hume v. Independent Sch. Dist., 180 Iowa 1233 [164 N. W. 188]. This conclusion finds support in many decisions in other jurisdictions. Ashley v. Board of Education, 275 Ill. 274 (114 N. E. 20); School Dist. of Borough of Ben Avon v. Sch. Dist. of Pittsburgh, 77 Pa. Super. Ct. 75; I. O. O. F. of W. Va. v. Board of Education, 90 W. Va. 8 (110 S. E. 440) [48 A. L. R. 1092]; Board of Trustees v. Powell, 145 Ky. 93 (140 S. W. 67) [36 L. R. A., N. S., 341, Ann. Cas. 1913B, 1016]; Yale v. West Middle Sch. Dist., 59 Conn. 489 (22 Atl. 295) [13 L. R. A. 161]; Logsdon v. Jones, 311 Ill. 425 (143 N. E. 56); Delaware, L. & W. R. Co. v. Petrowsky, [2 Cir.] 250 Fed. 554.

"This precise question has not been decided by this court, but it arose in the following cases from other jurisdictions, in which it was held that children cared for in a charitable institution are residents of the school district in which the same is located. Delaware, L. & W. R .Co. v. Petrowsky, supra; Logsdon v. Jones, supra; Ashley v. Board of Education, supra; School Dist. of Borough of Ben Avon v. School Dist. of Pittsburgh, supra; I. O. O. F. of W .Va. v. Board of Education, supra."

Our conclusion in this case must be ruled by the decision in that case.

II. With respect to the appellant's contention that it had exclusive jurisdiction to determine the residence of these pupils, the appellant invoked the equitable jurisdiction of the district court, and all matters material or necessary to a determination of the questions at issue, including the determination of the residence of the pupils, were before the court and within its jurisdiction.

III. Section 4275 of the Code provides that pupils, from a school district which does not offer a four-year high

school course, if they are eligible to take such course, may attend any high school in the state. Section 4276 provides that ''any person applying for admission to any high school under the provisions of section 4275'' shall present to the officials of the latter an affidavit of his parent or guardian, or if he have neither, his next friend, that he is entitled to attend said school, and that he is a resident of a school district in the state, naming it. He shall also present a certificate of the county superintendent showing proficiency in the common branches, and other stated elementary subjects.

These pupils presented no affidavits, but did present the required certificate of the superintendent. The appellant insists that the statutory provisions are mandatory, and that compliance therewith is an essential condition precedent to placing liability for the tuition upon the appellant. We do not agree with this contention. Appellant insists that the word ''shall'', in the section, means ''must'' and calls to our attention a number of cases holding that ''the uniform rule seems to be that the word 'shall' when addressed to public officials, is mandatory and excludes the idea of discretion.'' City of Newton v. Board of Supervisors, 135 Iowa 27, 30, 112 N. W. 167, 168, 124 Am. St. Rep. 256; McDunn v. Roundy, 191 Iowa 976, 979, 181 N. W. 453; Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, 226 N. W. 182; Vale v. Messenger, 184 Iowa 553, 558, 168 N. W. 281.

It may be conceded that ordinarily such statutes should be so construed, but not in every instance. When the word ''shall'' is given the mandatory meaning of ''must'', and when it may be given the discretionary meaning of ''may'', is well stated in the last case cited above, Vale v. Messenger, 184 Iowa on page 558, 168 N. W. on page 283, as follows:

''The word 'shall', appearing in statutes, is generally construed to be mandatory. Where no right or benefit depends on its imperative use, it may be, and often is, treated as synonymous with 'may'. The rule of construction is quite clearly expressed in Wheeler v. City of Chicago, 24 Ill. 105, quoted with approval in First Nat. Bank of Helena v. Neill, 13 Mont. 377 (34 Pac. 180).

'' 'The word ''may'' is construed to mean ''shall'' whenever the rights of the public or third persons depend upon

the exercise of the power or performance of the duty to which it refers. And so, on the other hand, the word "shall" may be held to be merely directory, when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to the individual, by giving it that construction. But, if any right to anyone depends upon giving the word an imperative construction, the presumption is that the word was used in reference to such right or benefit. But, where no right or benefit to anyone depends upon the imperative use of the word, it may be held to be directory merely.' "

It will be noted that the direction in section 4276 is not addressed to a public official, but to the applying pupil. It reads "*any person applying for admission* to any high school, * * * *shall present* to the officials thereof the affidavit * * *." There is no mandate to the official. The officials may insist upon the presentation of the affidavit, but they are not commanded to. They may waive it, if they wish. No right of the appellant district was abridged or enlarged by this waiver on the part of appellee's officials. It was not misled, nor was it injured thereby. Appellant knew that these pupils were attending the Muscatine high school, and that the appellee was claiming the appellant was liable for the tuition. The basic fact upon which the appellant's liability depends is that of the residence of these pupils within its district, and not the filing or the failure to file the affidavits. The purpose of requiring the affidavit of residence is to inform the district receiving the pupil of the district from which he comes, so that it may have a record of that fact for the purpose of charging and billing the outside district. Appellant never before denied liability on account of this failure, but at all times refused to pay because the pupils were not residents or it was not sure they were legal residents of its district. It does not appear to us that it was the intention of the legislature to permit a school district to escape liability for a bona fide tuition debt for residents of its district because of the failure to require such affidavits.

Section 4276 was fully complied with with respect to receiving the certificates of proficiency signed by the county superintendent.

Appellant also claims that private elementary schools are not within the purview of sections 4275 et seq. We do not

agree with this contention. Section 4275 provides that any person of school age who is a *resident* of a school corporation, and who has completed the course as approved by the department of public instruction for such corporation, shall be permitted to attend any public high school. These pupils were residents of the appellant, and the completion of the required course of study had been certified to by the county superintendent, whose official duties gave him general supervision over the courses of study and the educational requirements of all county schools of the class of the appellant. We do not believe that it was the intention of the legislature to discriminate against private, denominational, or parochial schools, or to bar them from the benefits of these statutory provisions.

IV. The following is a statement of the account involved:

| NAME | TIME OF ATTENDANCE | | AMT. CHARGED |
|---|---|---|---|
| Helene Monk | Sept. 1930 to June 1931 | 10 months | $100.00 |
| Margaret Schwartz | Sept. 1930 to June 1931 | 10 months | 100.00 |
| Helene Monk | Sept. 1931 to June 1932 | 10 months | 100.00 |
| John Nelson | Sept. 1931 to June 1932 | 10 months | 100.00 |
| Margaret Schwartz | Sept. 1931 to June 1932 | 10 months | 100.00 |
| Margaret Schwartz | Sept. 1932 to June 1933 | 10 months | 100.00 |
| Arnold Sauer | Sept. 1932 to June 1933 | 10 months | 100.00 |
| John Nelson | Sept. 1932 to June 1933 | 10 months | 100.00 |
| Arnold Sauer | Sept. 1933 to June 1934 | 10 months | 85.00 |
| Arnold Sauer | Sept. 1934 to June 1935 | 10 months | 85.00 |
| Reinhardt Meinders | Jan. 1935 to June 1935 | 5 months | 42.50 |
| Fleta McAvoy | Sept. 1935 to June 1936 | 10 months | 85.00 |
| Christine Nelson | Sept. 1935 to June 1936 | 10 months | 85.00 |
| Arnold Sauer | Sept. 1935 to June 1936 | 10 months | 85.00 |
| Ralph Shields | Sept. 1935 to Dec. 1935 | 3½ months | 27.63 |
| Reinhardt Meinders | Sept. 1935 to June 1936 | 10 months | 85.00 |
| Irma Shields | Sept. 1935 to June 1936 | 10 months | 85.00 |
| Fleta McAvoy | Sept. 1936 to June 1937 | 10 months | 85.00 |
| Reinhardt Meinders | Sept. 1936 to June 1937 | 10 months | 85.00 |
| Christine Nelson | Sept. 1936 to June 1937 | 10 months | 85.00 |

Total due $1,720.13

The appellant contends that the first five items, totaling $500 are barred by the statute. In our judgment the account is a continuous, open, current account, within the meaning of section 11011 of the Code. In Cedar County v. Sager, 90 Iowa 11, 14, 57 N. W. 634, 635, the same defense was made under somewhat similar circumstances. The county was seeking to recover

from an insane person's estate the quarterly sums which it had paid for the care of the deceased in the state hospital at Mount Pleasant. The court said:

"We are of the opinion that the charges in these cases constitute accounts, within the meaning of the statute, and that they are continuous, although the charges were made at stated intervals."

In a like situation that case was followed and approved in Buena Vista County v. Woodbury County, 163 Iowa 626, 145 N. W. 282.

V. Chapter 123 of the Acts of the Forty-seventh General Assembly, in our judgment, is not available as a defense herein. In the first place that legislation has application to children who are public charges. The children in this case were not public charges and neither the state nor any subdivision thereof contributed to their care or keep. They were supported solely by the beneficence of the Lutheran Society, and its patrons.

Secondly, we do not believe the act was intended by the legislature to be retroactive. Furthermore neither the state of Iowa, nor its treasurer were in any way involved in this litigation.

VI. It is conceded that the Lutheran Society was a home-finding agency, under chapter 181-A4, section 3661-a58 et seq., of the 1935 Iowa Code. The record shows little, if any, activity in this endeavor. Appellant urges that the Society did not comply with section 3661-a83, in accepting children, by obtaining either a court order, or a release from the parents or parent, attested by two witnesses. Also that it did not comply with chapter 473, section 10501-b1 et seq., of the Code, covering adoption. This may be conceded, but it would be stretching a point to say that these provisions have any application in this case. This case involves no violation of either chapter, nor is any question of adoption or home finding in issue herein. What we have already said disposes of this contention.

The decree of the trial court is accordingly affirmed.—Affirmed.

OLIVER, C. J., and RICHARDS, SAGER, MITCHELL, MILLER, and STIGER, JJ., concur.