JOHN C. WISDOM, Appellant, v. BOARD OF SUPERVISORS OF POLK COUNTY et al., Appellees.

No. 46710.

JULY 27, 1945.

Wisdom & Wisdom, of Des Moines, for appellant.

Francis J. Kuble, County Attorney, and E. S. Thayer, Assistant County Attorney, for appellees.

MULRONEY, J.— On November 12, 1942, the appellant filed two claims against the domestic-animal fund of Polk County, Iowa, for the alleged loss of sheep injured or killed by dogs. One claim was for fifty head of sheep injured or killed on November 3, 1942, and asked for the allowance of damages in the sum of $675. The other claim was for twenty-five head of sheep injured or killed on November 10, 1942, and asked for the allowance of damages in the sum of $337.50. Both claims were denied by the Board of Supervisors on the 26th day of February 1943, and reconsidered and again denied on the 29th day of May 1943. The appellant filed a petition in the district court of Polk County, Iowa, praying for a writ of certiorari, alleging that the board exceeded its proper jurisdiction and acted illegally and contrary to law in denying the

claims; that the board has no authority, power, or jurisdiction, to deny said claims; and that the board has no discretion in the matter save and except to allow the claims in a reasonable amount. The writ issued, commanding the board to certify and return the original claims together with a transcript of the board records and proceedings thereon.

The board filed a return to the writ, stating:

"2. The Respondents show to the Court that the Claims of John C. Wisdom, to which reference is made in the Petition in this cause, were filed in the Office of the County Auditor of Polk County, Iowa, on the 12th day of November, 1942; that said Claims were denied by the Board of Supervisors of Polk County, Iowa, on the 27th day of February, 1943; and that upon the reconsideration of said Claims the same were again denied by the Board of Supervisors on the 29th day of May, 1943. Copies of said Claims are hereto attached, marked respectively Exhibits 'A' and 'B' and by this reference made a part of this Return.

"3. That the Respondents, prior to, and in deciding upon the said Claims took in consideration and made use of, as a basis of their disposition, the following facts, circumstances and other matters as set out in Paragraphs 4 to 9, inclusive, hereof, and that by reason of said matters and things the Board of Supervisors decided the said Claims in the manner which it deemed just and in accordance with the belief of each member of said Board.

"4. That the Claims filed do not conform to the provisions and requirements of Code Section 5453, in that said Claims do not contain a detailed Statement of the facts attending the killing or injury of the sheep for which damages are claimed.

"5. That said Claims are insufficient in statement of the damages claimed in that the value of each animal killed or injured is not alleged and set out so as to permit the Board of Supervisors, in case of the allowance of said Claims, to enter of record the value of each animal killed, or injured, as required by Code Section 5454.

"6. That said Claims are insufficient in that they do not state whether the damages demanded are for animals killed;

or for animals injured; the extent of any such injuries or the amount of damages claimed for the animals included in each class of losses.

"7. That after the said Claims were denied on the 27th day of February, 1943, the Claimant thereto, through his attorney, asked for the reconsideration of said Claims by the Board of Supervisors, which request was granted, and that the Claimant through his attorney appeared before said Board on the 29th day of May, 1943, when said Claims were reconsidered and again denied.

"That the Claimant, at these hearings and at all other times, failed to submit any evidence to the Board of Supervisors tending to establish the facts attending the killing or injury of the sheep for which damages are claimed; the value of each animal whether killed or injured; what part of the damages claimed was for the killing of animals and what part for injuries to them; the general nature of such injuries, if any; the amount of salvage value of the carcasses; or whether the affiants who verified the said Claims did so on personal knowledge, or on hearsay information only. * * *

"10. That the Board of Supervisors reached the following conclusions:

"a. That the Claims filed by the said John C. Wisdom were not in the form required by the provisions of Code Sections 5453 and 5454, and that the facts and circumstances stated therein were not, by themselves, sufficient to justify the allowance of the Claims and payment out of the Domestic Animal Funds of the County.

"b. That the Claimant did not offer any other evidence to substantiate said Claims, and in the opinion and belief of the Board of Supervisors and each of the members thereof, said Claims were not proven. * * *

"e. That there were disputed questions of fact involved in the consideration of said Claims which justified and demanded the exercise of the discretion vested in the Board of Supervisors by the language of Code Section 5454, and that in the exercise of such discretion the Board of Supervisors should and were compelled to find that the statements contained in said Claims

were not proven to be true and that said Claims had to be denied.

"f. That the Board of Supervisors was without power or authority under the provisions of Code Section 5454 to allow any part of the Claims filed by John C. Wisdom which the Board of Supervisors did not, at the time of its decision, deem to be just.

"11. That the Board of Supervisors denied said Claims because in its belief it did not deem any part of said Claims to be just."

Other paragraphs of the return were stricken upon motion of the appellant. The appellant filed a denial of the return and a reply thereto wherein he denied that the return stated the proceedings of the board upon his claims and specifically denied the statements made in paragraphs 3, 4, 5, and 6 of the return. He admitted that he appeared before the board, through his attorney, on May 29, 1943:

" * * * and requested reconsideration of the said claims, and states the facts to be that he offered to bring the witnesses who viewed the sheep in question after they were killed, before the said Board and offered to prove that the claims filed did not cover all of the sheep that had died as the result of the attack by dogs, as alleged in petitioner's petition, and asked the Board to fix a date on which the petitioner could bring said witnesses before said Board, and that said Board, despite said offer, proceeded to reconsider and deny said claims on that same day, without giving the petitioner any opportunity to present the witnesses or further evidence of his loss."

For further reply to the return, the appellant alleged:

"Paragraph 1. That the claims filed herein by the petitioner are in exact form, upon blanks furnished by the respondents as claims previously filed by him and allowed by said Board, and that at no time did the respondents, or any one of them, request further information or make any investigation of his said claims;

"Par. 2. That the said claims filed herein and described in petitioner's petition contained the same description and state-

ment of the circumstances attending the killing of said sheep as was stated in said previous claims filed by petitioner and allowed by respondents;

"Par. 3. That the respondents have acted upon and allowed the claims of numerous other claimants, both before and after the disallowance of claims of petitioner on February 27, 1943, and May 29, 1943, upon forms identical with the forms of claims filed herein by petitioner and without requiring any statement as to whether said claims were based upon the killing or injury to domestic animals for which said claims were filed, and without requiring any statements of the circumstances attending the killing or injury of said domestic animals or the value of each animal, whether killed or injured, or requiring any of the information set out in Paragraph 7 of said return.

"Par. 4. That the respondents acted upon assumed facts having no foundation and ignored undisputed facts appearing on said claims and that the undisputed facts before respondents at said time do not sustain the action by said respondents.

"Par. 5. That, by reason of the facts hereinbefore stated, the action of the respondents in denying the claims of this petitioner was arbitrary, unjust, capricious, illegal, and contrary to the statutes made and provided for the administration of the domestic animal fund created under the statutes of this state."

The board filed a motion for judgment on the pleadings, alleging as grounds therefor, among others:

"1. The pleadings show that the claims filed by the petitioner with the Board of Supervisors of Polk County, Iowa, as alleged in Paragraph 5 of the petition herein, do not conform to the requirements of Code Section 5453 in the following particulars, to-wit:

"(a) The said claims do not contain a detailed statement of the facts attending the killing or injury of the animals for which damages are claimed by the petitioner. * * *

"(c) Said claims do not set out whether the damages claimed are for animals killed, or for animals injured, or the amount of damages claimed by the petitioner for each class of losses.

"5. That the pleadings show that the Board of Supervisors of Polk County, Iowa, acted within the discretion vested in them by Code Section 5454 and that the action of the Board of Supervisors relative to said claims cannot be reviewed by Writ of Certiorari."

After resistance filed by the appellant, the motion was sustained upon the grounds set forth above, the court's ruling stating:

"It is the ruling of the court that Ground 1 of said motion be sustained for the reasons set forth in subparagraphs (a) and (c) thereof, it being the holding of the court that there is a substantial defect in the claims filed in that they do not contain a detailed statement of the facts attending the killing or injury of the animals for which damages are claimed by the petitioner; that the statute requiring the same is mandatory, and that the statute cannot be waived and that the officials may not, by express words or conduct, or custom of dealing, estop the Board or County from taking advantage of the insufficiency. * * *

"Ground 5 of respondents' motion is sustained."

After judgment for the board, claimant appealed.

I. Chapter 276, Code of 1939, provides for annual license fees for dogs to be paid to the assessor or auditor and provision is made for the increase of such fees if it appears "that said fees will not produce sufficient funds to pay the claims on the domestic animal fund * * *." Section 5425. Chapter 277 provides, in section 5452:

"Any person damaged by the killing or injury of any domestic animal or fowl by wolves, or by dogs not owned by said person, may, within ten days from the time he or his agent has knowledge of such killing or injury, file with the county auditor of the county in which such killing or injury occurred a claim for such damage."

Section 5453 provides:

"Forms of claims. Claims aforesaid shall state the amount of damages, a detailed statement of the facts attending the

killing or injury and be verified by affidavit of at least two disinterested persons not related to claimant.''

Section 5454 provides:

''Allowance of claims. The board shall act on such claims within a reasonable time, and allow such part thereof as it may deem just. When a claim is allowed, the value of each animal or fowl killed or injured shall be entered of record.''

The next two sections in the chapter provide that the warrant for allowed claims shall be payable January 1st following issuance and only from the domestic-animal fund, and if this is insufficient, then the claims shall be paid pro rata. The remaining section in the chapter provides for the transfer of the balance over $500 after payment of the claims to the general fund or its use for the payment of claims of societies for the prevention of cruelty to animals.

The original Domestic Animal Fund Law was enacted as chapter 70, Laws of the Twentieth General Assembly, effective in 1884. It provided for the licensing of dogs and the payment of claims against the fund in much the same manner as now provided in chapters 276 and 277. It was entitled: ''An Act to Provide a Fund from which to Pay for Sheep or Other Domestic Animals, Killed or Injured by Dogs.'' The law has been amended several times but the basic plan of the creation of a special fund, contributed to by owners of all dogs, to meet the claims for damages to domestic animals caused by dogs, has always been retained. Ellis v. Oliphant, 159 Iowa 514, 141 N. W. 415.

II. The ruling sustaining ground 5 of the motion for judgment on the pleadings, which was sustained by the trial court, was in effect a ruling that the pleadings showed the board acted within the discretion vested in it by section 5454, and hence the board's action cannot be reviewed by certiorari. Much of the board's argument in support of this ruling is to the effect that the board has arbitrary power to allow the claim or not; that the matter of allowance is entirely within the discretion of the board; that there need be no evidence to support the board's decision of disallowance; and that the board need

not be confined to a consideration of the facts and circumstances stated in the claim but can give consideration to other circumstances, such as the possible negligence of the owner in protecting his sheep from the depredations of dogs. The board is driven to this argument for the pleadings do not show that there was ever any consideration of the merits of appellant's claims with a view to determining whether or not claimant owned sheep that were killed or injured by dogs within the time fixed by statute. The only discretion which the pleadings show the board exercised was the arbitrary discretion to allow or reject claims without consideration of the merits or the discretion to reject claims because of insufficiency in form. We will deal with the latter in subsequent divisions of this opinion.

The appellant contends the statute imposes upon the board the duty and obligation to exercise a sound judicial discretion in passing upon each claim. We are of the opinion that the statute, section 5454, is no grant of arbitrary power to the board. The command to the board is that it "shall act" and "shall allow" such part of the claim as it may "deem just." The word "just" means reasonable, correct, true, due. Webster's New International Dictionary. This fund is primarily created as a fund to which claimants for injuries to domestic animals are to resort. In passing upon claims, the board's inquiry should ordinarily be directed to the following: (1) Was the claimant the owner of the domestic animals killed or injured? (2) Were they injured or killed by wolves or by dogs, not owned by claimant, within ten days from the date of the filing of the claim (or the date the owner or his agent had knowledge of such injury or killing)? (3) What was the extent of the damage based upon the value of the animals injured or killed?

While we hold the board's inquiry is circumscribed by the statute, we do not hold that the manner of conducting the inquiry is bound by the rules of evidence in cases in court. The board or its members can act upon their own knowledge, upon their independent investigation, or upon the statements in the claim, supported by affidavits, and their reasonable conclusion based upon such an inquiry will not be reviewed.

III. But the board argues, and the trial court held,

that the statute regulating the form of claims, section 5453, provides that the claims "shall state * * * a detailed statement of the facts attending the killing or injury * * *" and, since the claims here did not contain such detailed statement, a substantial defect was present in the filed claims; that the statute requiring the detailed statement is mandatory and therefore the action of the board in denying the claims was right. It is true that the claims which appellant filed contained no detailed statement of the facts attending the killing or injury of the domestic animals. The claims were made out on claim blanks which purport to be Iowa Official Form 1915, No. 378. The printed form is directed to the Board of Supervisors of................County and it follows with:

"Your claimant states that he was on the........day of............... A.D., 19......, the owner of the following described domestic animals, which were on the above mentioned date injured or killed by.................. in the county aforesaid, as follows, to-wit: [Then follow nine blank lines.] And that by reason of such killing or injury to said domestic animals, he has been damaged in the sum of........................dollars."

The remaining part of the printed form contains the proper allegations that claimant was not the owner of the dogs, etc., and the supporting affidavit forms for the two disinterested persons acquainted with the facts. Appellant filled out his two claims on these forms, merely stating "50 head of sheep" on the larger claim on one of the blank lines following "to-wit," and "25 head of sheep North on Beaver road 1 house north of Beaver Creek" on the smaller claim. All of the other blanks were properly filled out, including the affidavits which were signed by the disinterested persons.

Is the provision that the claims shall contain a detailed statement of the facts attending the injury or killing mandatory? The board argues that it is, and cites the familiar line of cases announcing the rule that when a statute gives a right and creates a liability which did not exist at common law, and at the same time points out a specific method by which the right can be asserted and the liability ascertained, that method must be strictly pursued.

This rule would be applicable if the appellant had sought to recoup his damages in some manner other than a claim against the domestic-animal fund, like the situation in Hodges v. Tama County, 91 Iowa 578, 60 N. W. 185, where the county was the defendant and we dismissed the appeal, holding such claims were not claims against the county. The stated rule does not answer the question as to whether this section 5453 is a mere regulatory statute or not. The rule that one who seeks a remedy that did not exist at common law must strictly follow the statutory method to obtain the remedy can be granted, but it is still necessary to construe the method statute to see if it be mandatory or regulatory. He who seeks a remedy that did not exist at common law must pursue the statutory method to obtain the remedy, but his duty to comply strictly with the method statute depends upon whether that statute is to be construed as mandatory or regulatory. If the former, then compliance therewith is necessary in order to establish the jurisdiction to grant the relief. If the latter, compliance may be waived or noncompliance made the subject of estoppel that will prevent its being a ground for denial of the remedy.

We are of the opinion that section 5453 providing for the "Forms of Claims" is regulatory and not mandatory. The statute provides for the form and manner of presenting a claim. The right of the board to allow the claim in some amount against this fund does not seem to be conditioned upon the claim containing each and every statement the form statute details. True, the statute states that the "claims * * * *shall* state," etc., and the word "shall" appearing in statutes is generally construed as mandatory, but when the word is not addressed to public officials and no right is destroyed by giving it a directory meaning, it will be so construed.

In School Twp. v. Nicholson, 227 Iowa 290, 298, 288 N. W. 123, 128, we had under consideration section 4276, providing that:

"Any person applying for admission to any high school under the provisions of section 4275 shall present to the officials thereof the affidavit of his parent or guardian, or if he have neither, his next friend, that such applicant is entitled to

attend the public schools, and a resident of a school district of this state, specifying the district. He shall also present a certificate signed by the county superintendent showing proficiency in the common school branches, reading, orthography, arithmetic, physiology, grammar, civics of Iowa, geography, United States history, penmanship, and music.''

The record showed that the pupils presented no affidavits but did present the required certificate of the superintendent. We interpreted the word ''shall'' in the foregoing statute as directory. The opinion, by Justice Bliss, stated:

''Appellant insists that the word 'shall', in the section, means 'must' and calls to our attention a number of cases holding that 'the uniform rule seems to be that the word ''shall'' when addressed to public officials, is mandatory and excludes the idea of discretion.' City of Newton v. Board of Supervisors, 135 Iowa 27, 30, 112 N. W. 167, 168, 124 Am. St. Rep. 256; McDunn v. Roundy, 191 Iowa 976, 979, 181 N. W. 453; Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, 226 N. W. 182; Vale v. Messenger, 184 Iowa 553, 558, 168 N. W. 281.

''It may be conceded that ordinarily such statutes should be so construed, but not in every instance. When the word 'shall' is given the mandatory meaning of 'must', and when it may be given the discretionary meaning of 'may', is well stated in the last case cited above, Vale v. Messenger, 184 Iowa on page 558, 168 N. W. on page 283, as follows:

'' 'The word ''shall'', appearing in statutes, is generally construed to be mandatory. Where no right or benefit depends on its imperative use, it may be, and often is, treated as synonymous with ''may''. The rule of construction is quite clearly expressed in Wheeler v. City of Chicago, 24 Ill. 105, quoted with approval in First Nat. Bank of Helena v. Neill, 13 Mont. 377 (34 Pac. 180). '' ' ''The word 'may' is construed to mean 'shall' whenever the rights of the public or third persons depend upon the exercise of the power or performance of the duty to which it refers. And so, on the other hand, the word 'shall' may be held to be merely directory, when no advantage is lost, when no right is destroyed, when no benefit is

sacrificed, either to the public or to the individual, by giving it that construction. But, if any right to anyone depends upon giving the word an imperative construction, the presumption is that the word was used in reference to such right or benefit. But, where no right or benefit to anyone depends upon the imperative use of the word, it may be held to be directory merely." ' "

The opinion continues with the observation that it is the applying person that is directed to present the affidavits and there is no mandate to the officials:

"The officials may insist upon the presentation of the affidavit, but they are not commanded to. They may waive it, if they wish."

When we consider that this fund was created primarily for the benefit of claimants whose domestic animals have been injured or killed, we carry out the legislative intent when we give the statute a liberal construction that will not defeat a claimant's right of recovery merely because of formal defects in his claim. We do not mean to hold that the board could not insist upon strict compliance with this statute as to the form of claims. But we do mean that they are not commanded to and therefore the statute is not mandatory. To hold otherwise might well fasten upon the board members personal liability for the payment of claims where section 5453 was not strictly complied with.

IV. As has been previously stated, the basic purpose of chapters 276 and 277 is to raise a fund from dog owners to pay claimants for damages largely caused by dogs. The Board of Supervisors is charged with one of the duties, namely, to act upon claims and make a just allowance. If we consider the statements in the claim as designed to notify the board of the nature of the claim and the facts and circumstances surrounding the injury or killing of claimant's domestic animals, to the end that the board or its agents will have an opportunity to investigate the claim, then the statute is not unlike section 11007, paragraph 1, involving notices to city and town councils and boards of supervisors in connection with certain claims

for damages. We have held such a notice statute is to be liberally construed "to the end that parties having meritorious claims shall not be cut off by a mere technicality as to the form of notice to be required." Buchmeier v. Davenport, 138 Iowa 623, 625, 116 N. W. 695. See, also, Ray v. City of Council Bluffs, 193 Iowa 620, 187 N. W. 447, and cases there cited.

V.   Another statute that is analogous is section 3828.107, Code of 1939, providing:

"All claims and bills for the care and support of the poor shall be certified to be correct by the proper trustees and presented to the board of supervisors, and, if they are satisfied that they are reasonable and proper, they shall be paid out of the county treasury."

The antecedent statute, in the exact language, is section 2235, Code of 1897. In Brock v. Jones County, 145 Iowa 397, 403, 124 N. W. 209, 211, we held:

"The statute [section 2235] referred to is not mandatory in the sense that such certificate is essential to an allowance of a claim by the board. In other words, payment or allowance by the board of a claim which is defectively certified cannot be said to be illegal or unauthorized. This point is definitely ruled by Bradley v. Delaware Co., 57 Iowa, 552; Collins v. Lucas Co., 50 Iowa, 448."

VI.   The trial court sustained grounds 1(a) and (c) of the board's motion to the effect that the claims did not contain a detailed statement of the facts attending the killing or injury, and the claims did not set out whether the damages claimed are for animals killed or for animals injured or the amount claimed for each class of losses. We do not find a requirement in section 5453 that the claim be divided into the loss for animals killed and the loss for animals injured, but this is not important because the detailed statement of facts required by the section would probably contain such information. We have held that the statute is regulatory and not mandatory. We must now examine the record to see if it shows that the board waived the requirement of a detailed statement of facts attending the killing or injury and to see if the board is

estopped from asserting noncompliance as the reason for denial of the claim.

Waiver is the voluntary relinquishment of a known right. It may be shown by the affirmative act of the party charged therewith, or it may be inferred from such conduct as warrants the conclusion that a waiver was intended. Howe v. Sioux County, 180 Iowa 580, 163 N. W. 411.

This case comes to us on an appeal from a judgment upon the pleadings in a certiorari action. Ordinarily a motion for a judgment upon the pleadings in such an action is superfluous. In the usual certiorari action the case is ready for judgment after proper return of the writ. We so held in Price v. Town of Earlham, 175 Iowa 576, 157 N. W. 238. But in this case the appellant has denied that the return filed states the proceedings before the board, and he has replied to the return, alleging that the claims filed were on the claim blanks furnished by the board; that at no time did the board request further information or make any investigation of his claims; that he offered to bring witnesses before the board, who viewed the sheep after they had been killed; that he offered to prove that the claims did not cover all of the sheep that had died as a result of the attack by dogs; that the claims filed contained the same description and statement of the circumstances attending the killing of the sheep as were stated in previous claims filed by him; and that the board has acted upon and allowed the claims of numerous other claimants, both before and after the disallowance of his claims in form identical with his claims without any statement of attending circumstances, or the value of each animal, and whether killed or injured. For the purpose of the ruling on the motion, all of the foregoing should be taken as true. 49 C. J. 668, sections 945, 946; Scott v. Wilson, 150 Iowa 202, 206, 129 N. W. 812. Moreover, the filed return does show that appellant's claims were considered and reconsidered by the board.

It is not the function of certiorari to review questions of fact, but when undisputed facts are presented by the certiorari record, the court will review the conclusion of law founded thereon to see if the lower tribunal acted illegally. State ex rel. Rankin v. Peisen, 233 Iowa 865, 10 N. W. 2d 645.

For the purpose of the ruling on the motion, the facts in appellant's denial and reply have the same force as if the board stipulated they were all true. That they would be sufficient in law to constitute a waiver of the regulatory statute as to the form of the claim in respect to including a statement of the facts attending the killing or injury seems clear. Bradley v. Delaware County, 57 Iowa 552, 10 N. W. 898; Brock v. Jones County, supra, 145 Iowa 397, 124 N. W. 209; School Twp. v. Nicholson, supra, 227 Iowa 290, 288 N. W. 123.

▇ VII.   Does the record show that the board is estopped from denying the claims on the ground that they did not contain the statements of facts attending ·the killing or injury? Again we take the record as undisputed, for all disputes, insofar as the ruling on the motion is involved, are resolved in favor of appellant. But our inquiry differs somewhat from the inquiry as to waiver. While waiver and estoppel are closely akin, the former depends more on what the board intended to do while the latter depends upon what the board caused the appellant to do. Howe v. Sioux County, supra, 180 Iowa 580, 163 N. W. 411. We first look at the printed claim form furnished by the board on which the claims were filled out. Nowhere on this form is there any specific request for a detailed statement of the facts attending the killing or injury of the animals. This purports to be an Iowa official form. It is furnished by the board to farmers whose domestic animals have been killed or injured by dogs. It specifically calls for statements as to ownership of the animals killed or injured; the date they were injured or killed; that the injury or killing occurred or was known to claimant not more than ten days from the filing of the claim; that the injury or killing was not caused by dogs owned by claimant; the total amount of damages for the killing or injury; and the affidavits of two disinterested persons not related to claimant who swear to the facts alleged.· In argument the board contends the detailed statement of facts should be on the nine blank lines. There is no direction to the user of the form that the blank lines should be so used. Above the lines the claimant has stated that he is the owner of "the following described domestic animals" injured or killed on a certain date by either

dogs or wolves, and then follow the printed words "as follows to-wit:" and the nine blank lines. Surely these words do not suggest to the form user that he is to use the lines to relate a detailed statement of all the facts and circumstances. The words "the following described domestic animals * * * as follows to-wit:" suggest that the form user is to give the description or kind of domestic animals and the number injured or killed. That is exactly what this claimant did and the record shows he had so filled out prior claims which were allowed. The form statute is not to be made a trap whereby the board can furnish to farmers and owners of domestic animals a claim blank that does not call for a statement and then predicate denial of the claim on the failure to furnish the statement. The board is clearly estopped from denying these claims because of the failure to furnish the statement.

Our decision goes only to the judgment entered upon the pleadings. We hold that section 5454 does not lodge in the board unbridled discretion to allow or reject proper claims. We hold that the pleading record does not show the exercise of the discretion by the board commanded by section 5454. We hold that section 5453, properly construed, is regulatory as to the form of claim and not mandatory, and hence its requirements can be waived or the board can be estopped from asserting noncompliance therewith. We hold that the pleading record established the waiver of compliance with the requirement of section 5453 that claimant should state a detailed statement of the facts attending the killing or injury. We hold that the pleading record established an estoppel against the board which precluded the latter from predicating denial of the claims upon the failure to state therein such detailed statement.

Our holding means that the judgment entered upon the pleadings is reversed. The case stands for trial in the district court upon the petition, return, and other pleadings, and such other evidence as the court may receive. Rules of Civil Procedure, Rule 349; Steeves v. New Market, 225 Iowa 618, 281 N. W. 162; Riley v. Board of Trustees, 207 Iowa 177, 222 N. W. 403.

We do not pass upon the merits of the case, nor do we intimate what our holding will be, save as the same may be

686

indicated by our discussion of the pleadings, if, upon the trial, the allegations which we have assumed to be true are established.—Reversed and remanded.

All JUSTICES concur.