CHRIS HANSEN et al., individually and as members of Sioux City Board of Waterworks Trustees, appellees, v. RALPH HENDERSON et al., appellants; DREW H. FLETCHER, appellee.

No. 48217.

(Reported in 56 N.W.2d 59)

December 16, 1952.

Rehearing Denied March 18, 1953.

Wm. A. Shuminsky and Thos. J. Griffin, both of Sioux City, and Clarence M. Updegraff, of Iowa City, for appellants.

M. E. Rawlings and Sifford & Wadden, all of Sioux City, for appellees.

BLISS, J.—The evidence, mostly documentary, is in the record by stipulation, subject to objections. The determination of the questions on appeal is largely a matter of statutory construction, and there is debatable basis for the opposing contentions. The chief contentions are whether the Sioux City Board of Waterworks Trustees was validly established and whether the plaintiffs, as members thereof, are entitled to their offices. Plaintiffs assert that they are and the defendants assert the contrary.

There is little, if any, dispute as to the material facts. Sioux City acquired its waterworks plant and system in July 1885 from private owners who had previously operated it. It was a city of the first class at that time, having a population of between 15,000 and 16,000, and has continued in that class. Cities of the first class have a population of 15,000 or over. Cities of the second class have a population of 2000 but not exceeding 15,000. Every municipal corporation having a population of less than 2000 is a town. Section 508, Code, 1873, section 638, Code, 1897 (now section 363.1, Code, 1950). At that time there was no statutory provision for municipal boards of waterworks trustees, and the city, in its proprietary and private capacity, operated the system by its mayor, council and other employees. In 1898 a Board of Waterworks Trustees operated the plant until the statutory provisions under which the Board was established were declared unconstitutional (State ex rel. White v. Barker, 116 Iowa 96, 89 N.W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222). The city council had been operating the waterworks for a period just prior to January 1, 1952, at which time the city had a population in excess of 85,000.

Pursuant to the provisions of chapter 399, Code, 1950, the

city council, on December 14, 1951, established the Board of Waterworks Trustees by adopting Ordinance No. Q-37783, signed by the mayor at that time, Dan J. Conley, attested by the city clerk, and thereafter published. On December 17, 1951, the council adopted Resolution No. Q-37922, signed by said mayor and attested by the clerk, which recited that upon nomination by the mayor the plaintiffs were approved and confirmed as members of the first Board of Waterworks Trustees, to serve from the first secular day of January 1952 for the following terms, to wit: Frank Nero until the second year after the effective date of his appointment; Lawrence Baron and Chris Hansen until the first Monday in April of the fourth year after date of appointment; and S. F. Cusack and George Graham until the first Monday in April of the sixth year after date of appointment. Under the ordinance establishing the Board its members were required to have specified qualifications, to submit to certain conditions and restrictions, to take their official oaths, to give individual bonds in the sum of $5000, and they were to receive no compensation for their services.

Each member qualified on December 21, 1951, and on December 28, 1951, the council passed Resolution No. Q-37977 ratifying and approving their appointment. On January 2, 1952, the Board met, with all members present, organized, chose Chris Hansen permanent chairman of the Board, and passed a number of resolutions. The Board met again on January 10, 1952, and among other matters of official business approved the waterworks pay roll for the first half of January 1952 and ordered it paid. The Board met again on January 17, 1952, at which time claims were approved and other business was done. Official meetings of the Board were held on January 22 and 24, February 1, 7, 11, 15, 19, 25, 26, 29, March 6 and 12. All of these meetings and the business there conducted were had in the taking over, management and operation of the waterworks system of Sioux City.

On December 21, 1951, P. M. Mulford, a resident and taxpayer of Sioux City, brought suit against the mayor, commissioners and the members of the Board of Waterworks Trustees, being Cause No. 76732 Equity, in the Woodbury County District

Court, praying for a temporary writ of injunction restraining the city council from establishing the Board, and the members thereof from assuming the duties imposed upon them. On January 15, 1952, a decree by Judge Ralph C. Prichard was entered in said cause denying the writ and holding that the Board was lawfully established and its members were legally appointed.

On February 8, 1952, the city council adopted Resolution No. Q-38272, revoking the prior resolution appointing the members of the Board, and declaring the possession of all the assets of the waterworks system and its operation and management were in the city council; dissolving the Board; directing all city officers and employees to neither recognize the existence of the Board nor to obey its orders; denying the Board any funds or materials for operating the waterworks, and declaring that any city officer or employee who violated the provisions of the resolution should be deemed guilty of misconduct warranting his suspension or dismissal.

On February 8, 1952, the city council introduced and passed on the first and second reading Ordinance No. Q-38273, purportedly abolishing its prior ordinance establishing the Board.

On February 14, 1952, the plaintiffs in this suit filed their petition alleging the various proceedings of the council herein noted and other matters, praying that a temporary injunction be issued, without notice, enjoining defendants from pursuing their course of conduct in obstructing the plaintiffs in the discharge of their duties, and from taking any action to make effective Ordinance No. Q-38273, and further praying that Resolution No. Q-38272 be declared of no validity or force, and that upon final hearing the injunction be made permanent. On the same day, February 14, 1952, the district court, with Judge L. B. Forsling presiding, found the allegations of the petition to be true, and that defendants were about to do acts violating plaintiffs' rights respecting the subject of the action and tending to make the judgment ineffectual, and found that the issuance of the writ of temporary injunction would not stop the general and ordinary business of Sioux City. The writ was granted and ordered issued, and was issued on February 14, 1952, directed to the defendants herein, ordering and enjoining them and all

persons working under them until further order of the court in the proceeding from taking or attempting to take any action interfering with plaintiffs as members of the Board in the discharge of their duties; they were particularly enjoined from ordering or permitting any employees of Sioux City or of its waterworks department from disobeying proper orders of plaintiffs, or withholding from plaintiffs, as trustees, the possession of any or all assets, moneys, funds, real, personal and other property of said department; they were further enjoined from taking or attempting to take any action to pass, approve or publish the purported Ordinance No. Q-38273, or from in any manner putting into force and effect Resolution No. Q-38272.

Notwithstanding the injunction, the city council on February 15, 1952, placed upon its third reading, passed and approved said Ordinance No. Q-38273, therein stating:

"Be it ordained * * *:

"Section 1. Ordinance No. Q-37783, which ordinance established the Board of Trustees for the Sioux City Waterworks, is hereby entirely repealed. /s/ Ralph Henderson
Mayor."

Dan J. Conley had resigned as mayor of Sioux City, effective January 2, 1952, and Ralph Henderson succeeded him in the office on January 4, 1952.

Plaintiffs alleged in their petition that the Board of Waterworks Trustees was a statutory board created by the Legislature of Iowa, under the provisions of chapter 399, Code, 1950, with the power of appointment, only, by the city council, on the nomination of the mayor, as provided in said chapter; that there was no provision in chapter 399, or otherwise in the statutes, vesting in the city council any power or right to abolish said Board once it has been created; and that in the alternative, if it be considered that the power to create the Board and to appoint its members was discretionary in the city council, which plaintiffs denied, yet, once the Board had been created and appointed and had taken office, as by law provided, and as the Sioux City Board had done, that action was a finality and could not be abrogated, annulled nor changed by the city council.

On February 26, 1952, P. M. Mulford, plaintiff in said Equity Cause No. 76732, filed a dismissal of the suit without prejudice.

Defendants, other than Drew H. Fletcher, filed answer March 12, 1952, in which they admitted the adoption of the ordinances and resolutions mentioned herein; they denied that there was or is a validly created Sioux City Board of Waterworks Trustees, or that the plaintiffs were or are legally appointed or qualified members of any such Board, or that they validly assumed any duties, officially or individually, in connection with the operation of the waterworks; they averred that if plaintiffs ever held the office of trustees they were removed therefrom and their terms expired by Resolution No. Q-38272, adopted February 8, 1952, six days before this action was commenced, and that they had no right to maintain it. Defendants admitted that chapter 399, Code, 1950, made provision for a Board of Waterworks Trustees, but denied that it had any application to Sioux City or that it empowered the city council to create such Board, and denied that the council was without power to abolish such Board; denied that the council under chapter 399 had either a mandatory or discretionary power to create the Board; they alleged that chapter 397 of the 1950 Code and section 397.29 thereof were the only provisions applicable to waterworks of cities such as Sioux City, and that there was no compliance with those statutory provisions in the purported creation of the Board or in the appointment of its members.

Trial was had before the district court on April 21, 1952, and "Findings of Fact, Conclusions of Law, Judgment and Decree" were made and entered on July 15, 1952. The court found that the allegations of the petition were true and that the creation of the Board and the appointment of its members were valid and lawful as provided by chapter 399 of the 1950 Code of Iowa; that plaintiffs had qualified and had assumed the duties of their offices and entered upon the performance thereof; that the city of Sioux City, Iowa, was and is a municipal corporation under a commission form of government and had operated a municipal waterworks as a proprietary function since prior to 1919, and that its population at and before said year

had been 50,000 or more. The court concluded as a matter of law that the ordinance establishing the Board and the resolution appointing its members had both been legally adopted and were in full force and effect, and the trustees were rightfully in office; that the city council was without power to adopt the ordinance repealing the ordinance establishing the Board, and the resolution revoking the appointment and qualification of its members, and that said Ordinance No. Q-38273 and said Resolution No. Q-38272 were both null and void; that plaintiffs were entitled to a decree permanently enjoining the defendants from interfering with the plaintiffs in the proper performance of their duties as trustees and to a writ of permanent injunction so protecting them; that while the use of the word "shall" in Code section 399.14 directed to a public officer or body of public officers indicated that said provisions of chapter 399, Code, 1950, were mandatory, it was not necessary to so decide for the determination of the case; and that, in any event, power in addition to that granted in chapter 397, as amended, was vested in the city council of Sioux City, as a city of more than 50,000 population, and was properly exercised in the establishment of the Board and the appointment of its members, and its action in so doing was valid and should be sustained.

The court further concluded that said chapter 397, as amended, was and is a general empowering statute and that said chapter 399, originally enacted as chapter 288 of the Laws of the Thirty-eighth General Assembly, applicable to cities having a population of 100,000 or over, which minimum population was thereafter lowered to 50,000 by chapter 184 of the Laws of the Forty-third General Assembly, making it applicable to Sioux City, was and is a special statutory provision conferring additional powers, with respect to waterworks, on cities of 50,000 inhabitants or over, and that under said chapter 399 no election was required in establishing Boards of Waterworks Trustees when the Sioux City Board was established; that chapter 399 and section 399.14 thereof did not and do not operate prospectively, only; that said Boards are statutory Boards created by the legislature, under the provisions of Code chapter 399, as amended, with power in the city council to

appoint members of the Board on the nomination of the mayor, and there was and is no provision in said chapter or elsewhere in the law or statutes granting to or vesting in the city council any power or right to abolish the Board once it had been created; and that section 363.17, Code, 1950, is not applicable and furnishes no grounds for the abolishment of such Board by the city council of Sioux City. The court further concluded as a matter of law that Ordinance No. Q-37783 and Resolution No. Q-37922 were both lawfully passed and were in full force and effect; that the Board of Waterworks Trustees and its members have all the powers and authority and are subject to the provisions and conditions of said chapter 399, and the Board and its members were and are rightfully possessed of their respective official positions and are entitled to function as such, and have established their right to injunctive relief as prayed, and that the defenses raised and urged by the defendants were without merit.

Judgment and decree was rendered and entered in conformity with said findings of fact and conclusions of law.

It is from this judgment and decree that the defendants, with the exception of Mr. Fletcher, have appealed.

I. The propositions urged on this appeal by the litigants are substantially as alleged by them in their respective pleadings and referred to in the trial court's findings and conclusions, as hereinbefore noted. Defendants, in argument, state as a main issue the question whether the Sioux City waterworks system "purchased in 1885 under the provisions of what it now chapter 397 * * * could by the city council, without a city election * * * be placed under the control of a Board of Trustees under the provisions of chapter 399 * * *; and whether the defendants could remove the plaintiffs as members of said Board and whether they could abolish said Board if it was in fact validly created."

. No question was raised or urged below respecting the qualifications or fitness of any of the plaintiffs to properly hold or perform the duties of such office as trustee of a waterworks board for Sioux City. These matters were not the grounds of their purported removal from office. Their removal, or attempted removal, was by the purported abolishing of the office which they held, on the ground that it was not legally established.

In order to properly interpret and construe the statutory provisions pertaining to Boards of Waterworks Trustees as involved in this suit a summation of antecedent legislation will be helpful. The first legislation enacted is- found in "Ch. 162 (Chapter LXXVIII) H.F. 359" of the Fourteenth General Assembly, entitled "Water-Works in Cities and Towns." It was "An Act Authorizing Cities, incorporated Towns and Villages, to construct, or cause to be constructed, Water-works." The act was approved April 20, 1872, and became effective by publication April 27, 1872. By section 1, it authorized and empowered the designated municipalities "to construct, maintain, and operate water-works * * * or * * * authorize the construction, maintenance, and operation of such works by individuals or corporations, on such terms as may be agreed upon: * * *." The chapter contained ten sections, none of which mentioned anything about a board of waterworks trustees.

It was incorporated in substance in sections 471 to 475, inclusive, of chapter 10 of Title IV, Code of 1873, entitled "Of Cities and Incorporated Towns." Section 471 provided: "They shall have power to erect water works, or to authorize the erection of the same; but no such works shall be erected or authorized until a majority of the voters of the city or town at a general or special election, *or four-fifths of the members of the council or board of trustees thereof,* by vote, approve the same."

The italicized words were stricken by section 1 of chapter 26 of the Laws of the Twenty-second General Assembly, effective April 6, 1888.

Chapter 11, Acts of 22d G.A., amended section 471 of the Code of 1873 by "inserting in the first line thereof after the word 'works' the following words: 'Or to establish and maintain gas works or electric light plants, with all the necessary poles, wires, burners and other requisites of said gas works or electric light plants.'" Section 2 of chapter 11 also provided that sections 472, 473, 474 and 475 of the 1873 Code should apply to the establishment of gas works and electric light plants. as fully as they did to the erection of waterworks. Section 4 of the chapter provided for the approval of the voters for the establishment of gas works and electric light plants.

660

Nothing is mentioned in chapter 10 of the 1873 Code about waterworks trustees.

Sections 471 to 475, Code of 1873, became sections 720 to 725 of chapter 4, Title V, entitled "Of General Powers" (of cities and towns), of the 1897 Code.

The first mention of a board of waterworks trustees was after Sioux City acquired its municipal waterworks system and is found in chapter 1 of the Laws of the Twenty-sixth General Assembly, effective April 8, 1896. It is entitled "AN ACT to enable cities of the first class to buy or construct water works and to provide for the management thereof, and giving them additional powers in respect thereto." Section 1 of the Act granted power to cities of the first class to levy, in addition to the water tax authorized by law, a tax to provide a sinking fund to purchase or erect waterworks in such cities that had been approved by the voters. In section 5 the question on the ballot was " 'Shall the contract approved by the mayor and city council, in relation to water works, be adopted?' "

Section 6 of the chapter provided:

"The water works purchased, or erected by such city, shall be managed and operated by a board of water works trustees, which shall be composed of three electors, appointed for the term of six years by the district court of the county wherein such city is located.

"Upon the approval of the contract for the purchase or erection of water works by such city, the mayor of the city shall apply, within ten days thereafter, to said district court for the appointment of such board of water works trustees * * *."

This chapter (chapter 1 of 26th G.A.) became chapter 5 of Title V (Sections 742 to 750) of the 1897 Code. Section 750 was added by the Code editors, and stated: "The powers conferred by this chapter are in addition to the powers elsewhere granted in this code in respect to water works." Sections 6, 7 and 12 of chapter 1, 26th G.A., became section 747 of the 1897 Code, which section was repealed by chapter 41 of the Twenty-ninth General Assembly and by it re-enacted (effective March 15, 1902) as section 747-a of the 1913 Supplement to the 1897

Code. This section provided that waterworks thereafter owned, purchased or erected by cities of the first class should be managed and operated by a board of waterworks trustees consisting of three resident electors appointed by the mayor for the term of six years, at a compensation not exceeding $300 per year to each member, and under official bond of $5000 furnished by each.

This chapter (chapter 5 of Title V, Code, 1897) applied only to a waterworks public utility. But chapter 85, Acts of 38th G.A., entitled "Public Utilities in Cities and Towns", effective March 26, 1919, amended it by an addition (section 1) providing that the council of any city or town, other than cities of the first class and special charter cities, but including cities of the first class under the commission form of government having a population of less than 35,000 "which owns or may hereafter acquire waterworks, heating plant, gas works, or electric light or electric power plant, may, and upon petition of ten per cent of the qualified electors of such city or town shall", at an election submit the question as to whether the management and control of any such public utility should be placed under a board of trustees. This amending chapter (chapter 85, section 3, Acts of 38th G.A.) also provided that if the question was answered in the affirmative by the voters, the mayor should appoint a board of trustees of three members, who should be approved and confirmed by the council and whose successors should be appointed for terms of six years, under bonds of $2500 each and at a compensation not to exceed $100 a year.

Chapter 85 of the 38th G.A. had six sections with the publication section, and the first five sections became respectively sections 3974 to 3978, inclusive, of the Compiled Code of 1919. Said chapter 85 was amended by chapter 129 of the Fortieth General Assembly, effective July 4, 1923, which struck out the words and figures "thirty-five thousand (35,000)" and substituted therefor the words and figures "fifty thousand (50,000)." Chapter 85 of the 38th G.A. at neither the time of its enactment nor the time of its amendment had any application to Sioux City, since at each time its population was in excess of the population specified.

The legislation appearing in chapter 5 of Title V of the 1897 Code, the course of which from chapter 1 of the 26th G.A. and as amended by chapter 85 of the 38th G.A. and by chapter 129 of the 40th G.A. is set out herein, ultimately became section 397.29 of the Code of 1950, on which defendants largely rely.

Chapter 288, Acts of the 38th G.A., as amended, ultimately was incorporated in chapter 399 of the 1950 Code on which plaintiffs rely. Chapter 288, entitled "Powers of Cities Relating to Waterworks", effective May 1, 1919, was "AN ACT to confer additional powers on cities now or hereafter having a population of one hundred thousand (100,000) inhabitants or over, including cities acting under the commission plan of government, relating to waterworks." It provided that such cities "shall have the power to own, construct, erect, establish, acquire, purchase, maintain and operate a waterworks", upon the approval of a majority of the voters of any such city. It provided for the appointment by the council on the nomination by the mayor of a board of waterworks trustees, unless there was already such board, consisting of five resident voters, who should have the supervision of and be responsible to the city council for the administration and operation of the waterworks. This chapter of eighteen sections without the publication section became chapter 29, entitled "Purchase of Waterworks by Cities of One Hundred Thousand or Over", consisting of sections 3994 to 4010, inclusive, of the Compiled Code of 1919. Under the title just given the legislation appeared as chapter 314 (sections 6161 to 6190) with some amendments, in each of the Codes of 1924 and 1927. Section 6161 of chapter 314 of these Codes was amended by chapter 184 of the Laws of the Forty-third General Assembly, approved February 12, 1929, effective July 4, 1929, by striking the words "one hundred thousand (100,000)" and substituting in lieu thereof the words "fifty thousand (50,000)". Thereafter, and in the Codes of 1931, 1935 and 1939 this legislation appeared in chapters 314 of each under the title, "Purchase of Waterworks by Cities of Fifty Thousand or Over", and under the same title it appeared in chapter 399 of the 1946 Code, and now appears in chapter 399 of the 1950 Code.

Chapter 398 of each of the Codes of 1946 and 1950 is entitled "Purchase and Construction of Waterworks in Certain Cities".

It applies to "cities of the first class, and cities of the second class having a population of over ten thousand." They are authorized to levy a specified tax to create a sinking fund for the erection of waterworks or to pay for waterworks owned by them. The waterworks owned by such cities shall be managed by a board of three resident electors appointed by the mayor for a term of six years at a salary to each of not to exceed $300 per year, and each is bonded in the sum of $5000. The appointment of the trustees is by the mayor alone, without approval or confirmation by the council. This is the successor to chapter 313 in each of the Codes of 1924 to 1939, inclusive, bearing the same title which it has.

Chapter 397 of each of the 1946 and 1950 Codes is entitled "Heating Plants, Water. or Gas Works, and Electric Plants". Its provisions result from antecedent unrepealed legislation as the same appears in chapter 312 of the Codes of 1924 to 1939, inclusive, bearing the same title which it has, and from other legislation found in earlier Codes. It is a chapter containing general powers with respect to all public utilities appearing in its title. There can be no board of trustees for waterworks or for any other public utility unless the electors by vote authorize that the management or control of a utility be placed in the hands of a board of trustees. There is, of course, no need for a board of trustees unless it has a public utility to manage and control. If there is no authorization there is no board. And unless the mayor, alone, or ten per cent of the electors, desires it, there is no election. There appears to be a sound reason for this. Chapter 397 applies to all cities and towns, that is, it applies to all municipalities of every size and population. In many of the smaller ones the public utilities are of such nature and size that the mayor and council with little help can efficiently administer and operate them without the aid of a three-man board of trustees. It is a sound policy, under such circumstances, to permit the electors to decide whether a board of trustees is required with respect to any public utility. The compensation of the trustees shall not exceed $100 a year, except that in certain cities of less than 50,000 population they shall receive not over $300 a year.

These conditions are not true of chapter 398. No municipality included in that chapter has a population of less than 10,000 inhabitants. The appointment of a board of trustees is left solely to the mayor, and it is for him alone to select the trustees. Whether the board shall administer the trust is not discretionary with the electors. The statute itself (section 398.8) provides that "the waterworks owned by such cities shall be managed and operated by a board of waterworks trustees." Each trustee receives not to exceed $300 a year.

What is true of chapter 398 applies with much greater force and reason to chapter 399, in which every waterworks system is in a city of 50,000 population or over. Such a system requires a large investment of money and property and a large force of employees, and the income and expenditures are large. The statute requires five trustees. For some reason it makes no provision for their compensation. The council elects them on the nomination of the mayor. They serve for six years. A bond in the sum of $5000 is required of each trustee. The duties of the mayor and council in cities with populations of 50,000 or over are numerous and important. They include not only the usual public utilities but also the police and fire departments, the streets and alleys, the parks, swimming pools and other places of recreation, public health, taxation, and other matters incident to any municipality. The water system is especially important. It is an essential adjunct and aid in the administration of most of the other departments, in addition to its indispensable need to every inhabitant, household, school, and to every public or private institution or business. Because of its universal use and need chapter 288, Acts of the 38th G.A., was first enacted as special legislation applicable only to cities having a population of 100,000 or more. It was soon recognized that it should also apply to cities having populations between 50,000 and 100,000, and it was so amended. Chapter 288, 38th G.A., as enacted and amended, was, and chapter 399 of the 1950 Code is, legislation complete in itself, in addition to and not limited or controlled by the provisions of chapter 397, which apply, generally, to all municipalities and to all public utilities. The provisions of the two chapters are different in some respects

other than hereinbefore noted, namely, the number of trustees, the compensation and the amount of the bond. The fact that the legislation is special, distinct and separate is impelling proof that the provisions of chapter 399 rule the determination of this suit.

██ II. For the reasons stated the directions in section 399.14 are held to be demands and are mandatory. In each sentence in the section the verb contains the word "shall." In each of them it is used in a mandatory sense. When it is stated that the term of office "shall be" for six years it is not permissive or discretionary but means six years. And in the first sentence the word "shall" definitely means that the council *must* elect a board of trustees and that the action is not a matter of choice or discretion. The word "shall" appearing in statutes is generally construed to be mandatory. In City of Newton v. Board of Supervisors, 135 Iowa 27, 30, 112 N.W. 167, 168, 124 Am. St. Rep. 256, the court said:

"Sometimes courts are justified in interpreting the word 'shall' as 'may', but, when used in a statute directing that a public body do certain acts, it is manifest that the word is to be construed as mandatory and not permissive. * * * The uniform rule seems to be that the word · 'shall', when addressed to public officials, is mandatory and excludes the idea of discretion. * * * There are many reasons for this rule which need not be elaborated upon, as the cases cited fully present the grounds upon which it is based." (Citing authorities.)

See also Wisdom v. Board of Supervisors, 236 Iowa 669, 679–681, 19 N.W.2d 602; School Twp. v. Nicholson, 227 Iowa 290, 297–299, 288 N.W. 123.

██ It is the duty of the court, when possible to do so, to construe a legislative enactment so as to give intelligent purpose to its provisions. We must assume that the legislature realized the need and the importance of this legislation. The fact that a body of five persons holding office for a term of six years was thought necessary or proper is evidence of this. It certainly did not intend that such Board should be a matter of discretion in its creation or in its continuance, or that either

666

should be dependent upon the desire or judgment of each successive council or upon the personnel of its members. There are no statutory provisions for abolishing the Board. It is our conclusion that the provisions of section 399.14, and of section 399.17, which state that the Board shall have the supervision over and be responsible for the administration and operation of the waterworks, are mandatory, and that the establishment of the Board by Ordinance No. Q-37783, and the appointment of its members by Resolution No. Q-37922 and their confirmance by Resolution No. Q-37977 were all valid and effective and are in full force and effect, unaffected in any way by the adoption of Ordinance No. Q-38273 and Resolution No. Q-38272.

III. Defendants also place reliance for reversal upon section 47 of chapter 165 of the Laws of the Fifty-fourth General Assembly. This chapter contains sixty-nine sections. It is entitled "Cities under Special Charter and Specific Forms of Government"—"AN ACT to make all general laws pertaining to municipal corporations applicable to cities organized under special charter (with certain exceptions and limitations) as well as to cities organized under other specific and exceptional forms of municipal government; * * * and to amend various other sections of the Code by striking therefrom references to cities organized under special charter or organized under other specific and exceptional forms of municipal government; * * *." It became effective July 4, 1951.

Section 1 provides: "Municipal corporations organized under special charter shall have all of the powers and privileges of municipal corporations of like population organized under the general law and having the mayor-council form of government." This section is a repeal of section 420.40 of the 1950 Code.

Section 2, subsection 1, provides: "Except as hereinafter in this section provided, the provisions of this Code which, by their terms, are made applicable to all municipal corporations, shall be applicable to cities organized under special charter, and the provisions of this Code, applicable by their terms to municipal corporations of a certain population, shall be applicable to cities under special charter of like population, and except as

hereinafter in this section provided, said special charters shall have no further force and effect."

Section 69 provides: "Wherever reference is made in the statutes, other than in this Act, to cities and such reference is followed by the phrase 'including special charter cities' or by any other phrase of similar import referring to a specific form or forms of city government, the code editor is authorized to strike such reference to specific forms so that the reference will apply to cities generally."

An examination of the various sections of chapter 165 shows that in addition to special charter cities, the words in the title to the ACT, to wit: "or organized under other specific and exceptional forms of municipal government" refer to ·"commission governed cities and special charter cities" (section 33) ; "including cities under the commission plan" (sections 36, 37, 38, 39, 45, 46, 48, 51, 52, 56, 57, 58) ; "including cities acting under the commission form of government and cities acting under the city-manager plan of government" (sections 42, 55) ; and "whether organized under special charter or the general law for the incorporation of cities and towns" (section 66).

It appears to this court that the purpose of said chapter 165, as indicated by its title and the explanatory sections which we have quoted, is to make all general municipal statutes for the incorporations of cities and towns applicable alike to all municipal corporations of like population, whether operating under special charter, commission plan or form of government, or under the city-manager plan. And to effect this object the chapter strikes from the specified sections of the Code any words therein denoting the particular form of municipal government referred to. This chapter, as we view it, effects no changes in the law except to make it clear, as stated in section 1 of the ACT, that cities operating under a special form or plan shall have all the power and privileges of municipal corporations of like population, organized under the general law.

Mention is made in the arguments, but not stressed, that section 47 of chapter 165 of Acts 54th G.A. (which is, in substance, section 397.29, Code of 1950) is amended by striking the words, " 'including cities of the first class under the com-

mission form of government having a population of less than fifty thousand.'" We show the before-and-after effect of this by setting out the section as enacted, with the stricken words in parentheses, to wit:

"The council of any city or town (including cities of the first class under the commission form of government *having a population of less than fifty thousand*), which owns or may hereafter acquire waterworks, heating plant, gasworks, or electric light or electric power plant, may, and upon petition of ten percent of the qualified electors of such city or town shall, at any general election, or at a special election called for that purpose, submit the question as to whether the management and control of such waterworks, heating plant * * * shall be placed in the hands of a board of trustees." (Italics ours.)

After eliminating the stricken words, the section is broad enough to apply to any municipality, including Sioux City, although that was not true before the amendment. It is our conclusion that this was unintentional and an inadvertence, but if it was not it nevertheless does not affect chapter 399 or repeal any provision thereof expressly nor by implication.

We believe that the part stricken was not intended to include the words "having a population of less than fifty thousand", italicized in the section set out just above. We say this because to include them is contrary to the purpose of chapter 165. Of the sixty-nine sections, section 47 is the only one which includes more than the words descriptive of the special form of municipal government. In section 379A.1, Code of 1950, referred to in chapter 165, section 35, the words referring to population immediately following the words "including special charter cities" were not stricken. In section 413.1, Code of 1950, referred to in section 56, chapter 165, the same thing is true. It is also true in section 657.2 of the 1950 Code referred to in section 68 of chapter 165. And in section 397.33, Code of 1950, referred to in section 48 of chapter 165, the words "having a population of less than fifty thousand" following the words "operating under the commission plan and" were not stricken.

We therefore hold that there is no merit to this contention of the defendants.

■ IV. It is the contention of the defendants that section 399.14 applies only to cities having a population of 50,000 or over that have acquired, or will acquire, waterworks since the section became effective. We do not agree with them on this point or contention. We think the section applies to all cities having populations of 50,000 or over, which owned, operated or had municipal waterworks before or at the time the section became effective, or acquired them thereafter, or may acquire them in the future. The purpose or need of the legislation does not depend upon nor is it affected by the time of the acquisition of the waterworks. The board of waterworks trustees is just as necessary or proper for waterworks which existed before the statute became effective as it is or would be for those existing thereafter. Statutes, in general, should be uniform in their application and effect. The legislature, in our judgment, intended the statute to apply to waterworks in all cities having a population of over 50,000 inhabitants, at whatever time the waterworks were, or may be, acquired.

■ Defendants argue that the wording of the section leaves no basis for any other construction than they put upon it. They assert that "whenever" means in the future as does also the word "becomes." We think that "whenever" has the same meaning as "when" or "at whatever time" or "at any time", and may and does refer to the past, the present or the future; that it looks ahead and back, prospectively and retrospectively, and that the Code section includes Sioux City which owned its waterworks in 1885, and also any city having 50,000 or more inhabitants which has acquired its municipal waterworks system since the statute became effective, or may do so in the future. Whenever two or more periods of time are referred to we think a single verb, such as the word "becomes" in this instance, may properly refer to past time or to future time if either or both reasonably appear to have been included in the intention of the user of the language. The language of the section may reasonably be interpreted to mean "at whatever time the city owns the waterworks." It is only by such interpretation or construction that there can be uniformity in the application of the statute to all cities of over 50,000 inhabitants having municipal waterworks.

670

Adopting defendants' theory would require Sioux City to have a board of three trustees, with different compensation and $2500 bonds, while a city within the same population limitation acquiring waterworks after the statute became effective would have a board of five trustees under bonds of $5000, receiving no compensation. We are constrained to hold that the legislature did not intend such lack of uniformity.

It is our conclusion that the decree of the district court should be and is affirmed.—Affirmed.

All JUSTICES concur.