STATE of Iowa, Appellee,

v.

Ryan KLAWONN, Appellant.

No. 99–0631.

Supreme Court of Iowa.

April 26, 2000.

516

Maggi Moss of Parrish, Kruidenier, Moss, Dun & Montgomery, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and Steven K. Young, Assistant Attorney General, for appellee.

CADY, Justice.

Ryan Klawonn appeals the judgment and sentence imposed by the district court following his conviction for involuntary manslaughter in violation of Iowa Code section 707.5(1) (1997). He claims that portion of the sentence which requires him to pay $150,000 in victim restitution pursuant to section 910.3B (Supp.1997) violates his rights under the Excessive Fines, Double Jeopardy, and Due Process Clauses of the state and federal constitutions. He also argues the district court failed to exercise its discretion in imposing the restitution award. We affirm.

## I. Background Facts and Proceedings.

The facts which give rise to this case occurred within a matter of seconds on November 22, 1997, around 11:00 in the evening. Ryan Klawonn was driving a Chrysler vehicle south on Fleur Drive in Des Moines. The speed limit in the area was forty miles per hour. At the same time, Nathaniel Boykin was driving his Ford vehicle north on Fleur Drive. Boykin turned his vehicle into the left-turn lane of Fleur Drive as he approached the intersection of McKinley Avenue, and started to turn left onto McKinley Avenue. At that moment, Klawonn's vehicle approached the intersection at a speed in excess of seventy miles an hour.

Klawonn's vehicle struck the right front portion of Boykin's vehicle and violently pushed it into another vehicle. Boykin died within a short period of time as a result of the injuries sustained from the collision. He was seventy-one years old. Klawonn was twenty-four years old.

Just prior to the collision, Klawonn had stopped his vehicle at the intersection of Watrous Avenue and Fleur Drive, several blocks north of the crash scene. Klawonn was revving the engine of his Chrysler vehicle while waiting for the traffic control light to turn green. When the traffic light turned green, Klawonn quickly accelerated his vehicle and sped south on Fleur Drive. The road surface was dry that evening, and there were no drugs, alcohol, or other extenuating circumstances relating to the collision.

Klawonn was charged with homicide by vehicle in violation of section 707.6A(1)(a) (Supp.1997), but eventually pled guilty to involuntary manslaughter in violation of Iowa Code section 707.5(1) (1997). As a part of the sentence imposed by the district court, Klawonn was required to make restitution to the victim's estate in the amount of $150,000 pursuant to section 910.3B(1) (Supp.1997).

Klawonn appeals from the imposition of the restitution award under section 910.3B claiming it violates his rights under the Excessive Fines, Double Jeopardy, and Due Process Clauses of the United States and Iowa Constitutions. He also claims that the trial court failed to exercise its discretion in making the award. We affirm.

## II. Scope of Review.

We review constitutional issues de novo. *State v. Hamrick*, 595 N.W.2d 492,

493 (Iowa 1999). Statutory challenges are reviewed for errors of law. Iowa R.App. P. 4; *State v. Orozco*, 573 N.W.2d 22, 24 (Iowa 1997).

## III. Excessive Fines.

■ In *State v. Izzolena*, 609 N.W.2d 541 (Iowa 2000), we found the restitution award under section 910.3B does not violate the Excessive Fines Clauses of the Eighth Amendment of the United States Constitution, and article I, section 17 of the Iowa Constitution. Nevertheless, Klawonn claims the $150,000 restitution award imposed in this case is excessive in light of all of the underlying facts and circumstances of the offense.

■ The touchstone of the inquiry into the Excessive Fines Clause is based on the principle of proportionality. *United States v. Bajakajian*, 524 U.S. 321, 327, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314, 325 (1998). The "fine" must bear some relationship to the gravity of the offense it is designed to punish. *Id.* The sanction is excessive if it is grossly disproportionate to the gravity of the offense committed. *Id.* at 337, 118 S.Ct. at 2038, 141 L.Ed.2d at 331.

In balancing the amount of restitution against the gravity of the offense, Klawonn argues the seriousness of the offense is diminished because his underlying activity was exceeding the speed limit. Thus, he claims the traffic offense of speeding does not justify punishment in the form of a restitution award of $150,000. Additionally, he asserts the award is excessive because it is not dischargeable in bankruptcy and will likely constitute a debilitating financial burden for the remainder of his life.

We acknowledge the predicate public offense committed by Klawonn was a simple misdemeanor traffic offense. *See* Iowa Code §§ 321.285, 321.482, and 805.8(2) (1997). Nevertheless, we have consistently required that the public offense which serves as the underlying crime of involun-

tary manslaughter must be committed with recklessness. *See State v. Conner*, 292 N.W.2d 682, 686 (Iowa 1980). Thus, the gravity of the underlying offense is not merely speeding, but speeding which demonstrates a willful and wanton disregard for the rights of others. *See State v. Ayers*, 478 N.W.2d 606, 608 (Iowa 1991). The operation of a motor vehicle on a city street at a rate of speed greater than even permitted on the interstate highways of this state is a grave offense in light of the likelihood of serious harm, including death. A vehicle operated in a reckless manner can be an extremely dangerous instrumentality of harm. *See State v. Davis*, 196 N.W.2d 885, 890 (Iowa 1972). We reject Klawonn's argument that the gravity of his offense was diminished due to the underlying public offense he committed.

■ The inability to discharge the award in bankruptcy reveals a punitive aspect of the award.[1] *See State v. Mayberry*, 415 N.W.2d 644, 646 (Iowa 1987); *see also Kelly v. Robinson*, 479 U.S. 36, 49 n. 10, 107 S.Ct. 353, 360–61 n. 10, 93 L.Ed.2d 216, 228 n. 10 (1986). We also acknowledge the award is enforceable as a civil judgment, which can create broad long-term obstacles for Klawonn. *See* Iowa Code § 910.7A (1997).

■ The financial inability of an offender to pay a fine does relate to the degree of punishment. 24 C.J.S. *Criminal Law* § 1604, at 203 (1989); *see also State v. Trailer Serv., Inc.*, 61 Wis.2d 400, 212 N.W.2d 683, 689 (Wis.1973). The amount of a fine can adversely impact an offender with limited financial means more than an offender with greater financial means. Thus, it is properly considered under the proportionality test as it impacts the amount of the fine. *See* 24 C.J.S. *Criminal Law* § 1604, at 203. Even so, the impact is controlled by statutory restric-

---

1. We do not consider whether the bankruptcy court would be required to follow that portion of section 910.3B which declares the restitution award "shall not be dischargeable ... under the federal Bankruptcy Act." Ultimately, federal law, not state law, governs the determination of the dischargeability of debt. *See In re Gross*, 175 B.R. 277, 284 (Bankr. N.D.Ind.1994); *In re Tapp*, 16 B.R. 315, 318 (Bankr.D.Alaska 1981); *see also* 11 U.S.C. § 523(c) (1993).

tions and limitations placed on the enforcement and collection of the fine. *See, e.g.,* Iowa Code §§ 627.6, 642.21(1). The restitution statute permits the court to structure a plan of restitution to help diminish the collateral consequences of a civil judgment. *See id.* § 910.7; *Izzolena,* 609 N.W.2d at 552 n. 7. Furthermore, the collateral consequences feared by Klawonn merely result from those means provided by law to help all persons who hold a judgment to secure payment. *See generally* Iowa Code chs. 626, 641. Yet, those same laws also uniformly protect debtors from the multiple burdens associated with the enforcement of judgments. *See In re Marriage of Eklofe,* 586 N.W.2d 357, 359 (Iowa 1998). Thus, for the most part, the proportionality test under the Excessive Fines Clause looks beyond the individual financial consequences of paying a fine.

Considering the gravity of the offense, neither the amount nor the consequences of a judgment make the award grossly excessive. We conclude the $150,000 restitution award is not grossly disproportionate to the gravity of the offense of involuntary manslaughter involving the reckless operation of a motor vehicle.

### IV. Double Jeopardy.

We have determined a restitution award imposed by the court pursuant to section 910.3B does not violate the Double Jeopardy Clause of our state and federal constitutions. *Izzolena,* 609 N.W.2d at 543. Accordingly, we reject the contrary claim made by Klawonn in this case.

### V. Due Process.

■ Klawonn challenges the imposition of the restitution award under section 910.3B on procedural and substantive due process grounds. We rejected the same procedural challenge in *Izzolena. See id.* We therefore will only consider the claim by Klawonn that section 910.3B violates due process on substantive grounds. He

claims the restitution award not only bears no reasonable relationship to a legitimate government interest, but that portion of the statute which precludes him from denying the elements of the offense in any subsequent civil action impermissibly undercuts his right to enter an *Alford* plea.

■ Under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, the state is forbidden from infringing on certain fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1, 16 (1993). Article I, section 9 of the Iowa Constitution provides the same due process protections found in the Fourteenth Amendment to the United States Constitution.[2] Iowa constitutional due process claims follow federal principles, and thus, we do not address the state due process claim separately. *See State v. Miner,* 331 N.W.2d 683, 688 (Iowa 1983).

■ Substantive due process analysis requires that we first identify the asserted right and determine whether it is "fundamental." *Id.* We then determine whether the action infringing that right is narrowly tailored to serve a compelling state interest. *In re C.S.,* 516 N.W.2d 851, 860 (Iowa 1994). Where the right infringed upon is not fundamental, substantive due process requires no more than "a 'reasonable fit' between governmental purpose ... and the means chosen to advance that purpose." *Id.* at 861 (quoting *Flores,* 507 U.S. at 305, 113 S.Ct. at 1448–49, 123 L.Ed.2d at 18).

Klawonn does not allege that section 910.3B infringes upon a fundamental right, rather he argues it bears no rational relationship to any governmental interest. Our standard of review for his substantive

---

**2.** The Fourteenth Amendment states no State "shall deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1.

due process challenge then is a rational basis test. *See Kent v. Polk County Bd. of Supervisors,* 391 N.W.2d 220, 225 (Iowa 1986).

We have explained the rational basis test under a substantive due process challenge as this:

There is no dispute about the rule that, to be constitutional, [a statute] must have a definite, rational relationship to a legitimate purpose....

. . . .

A party who challenges [a statute] has the burden of proving it unconstitutional, and must negate every reasonable basis upon which the ordinance may be sustained. This means that the challenger has the burden of producing the evidence, and persuading the court, of the [statute's] lack of rational nexus with its supposed purpose.

, . . . .

... If reasonableness of the [statute's] nexus to its purported end is fairly debatable, it must be allowed to stand.

*Exira Community Sch. Dist. v. State,* 512 N.W.2d 787, 793 (Iowa 1994) (quoting *Kent,* 391 N.W.2d at 225).

We find an award under section 910.3B to have multiple purposes. It serves a remedial purpose in compensating the victim's estate. It also serves a punitive purpose in punishing the defendant. In doing so, it also serves a rehabilitative purpose for the defendant. We have previously found restitution "is designed to instill responsibility in criminal offenders." *State v. Haines,* 360 N.W.2d 791, 795 (Iowa 1985). Additionally, the Supreme Court has noted "[s]uch a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity...." *Kelly v. Robinson,* 479 U.S. 36, 49 n. 10, 107 S.Ct. 353, 360 n. 10, 93 L.Ed.2d 216, 228 n. 10 (1986).

The government interests in restitution awards under section 910.3B are both compensation to the family and punishment for the defendant. We find the award pursuant to section 910.3B is a "reasonable fit" between the above government interests and the means through which the legislature has chosen to accomplish them. *See In re C.S.,* 516 N.W.2d at 861. Thus, we find the award does not constitute a violation of substantive due process on these grounds.

▮ We also conclude section 910.3B(3) does not conflict with the Due Process Clause by effectively depriving an offender of the ability to enter an *Alford* plea. The *Alford* plea, as it has become known, was designed to permit a defendant to make a voluntary and intelligent decision to plead guilty to a crime without admitting participation in the underlying facts which constitute the crime. *See North Carolina v. Alford,* 400 U.S. 25, 37–38, 91 S.Ct. 160, 167–68, 27 L.Ed.2d 162, 171–72 (1970). This permits the defendant to avoid a full trial, placing the dispute as to the State's overwhelming evidence and the defendant's claimed innocence to be settled by a judge. *Id.* at 32, 91 S.Ct. at 165, 27 L.Ed.2d at 168. We first recognized the *Alford* plea in *Young v. Brewer,* 190 N.W.2d 434, 438 (Iowa 1971). However, the legal notions it adopted were first recognized by us over a century ago when we noted, "[r]easons other than the fact that [the defendant] is guilty may induce a defendant to so plead, ... [and][h]e must be permitted to judge for himself in this respect." *State v. Kaufman,* 51 Iowa 578, 580, 2 N.W. 275, 276 (1879).

*Alford* dealt with a defendant who chose to plead guilty to a lesser second-degree murder charge and face the accompanying thirty-year imprisonment to avoid the death penalty associated with first-degree murder. *Alford,* 400 U.S. at 39, 91 S.Ct. at 168, 27 L.Ed.2d at 172. An *Alford* plea is intended to permit a criminal defendant to take advantage of a lesser charge to avoid the risk of trial without admitting liability for the underlying facts, for in those situations the defendant has "absolutely nothing to gain by a trial and much to gain by pleading." *Id.* at 37, 91 S.Ct at 167, 27

L.Ed.2d at 171. Thus, the purpose of an *Alford* plea is not focused upon the potential impact such a plea would have in a subsequent civil suit, rather upon the defendant's cost-benefit analysis of avoiding the risks associated with a trial on the more serious charge.

 Additionally, a defendant has no fundamental constitutional right which requires the court to accept a guilty plea. *Farley v. Glanton,* 280 N.W.2d 411, 414 (Iowa 1979); *see also* Iowa R.Crim. P. 8(2)(b) (requirements for court to accept guilty plea). The court must determine a guilty plea has a factual basis before it can accept it, even where the plea is under *Alford. See State v. Schminkey,* 597 N.W.2d 785, 788 (Iowa 1999); *Farley,* 280 N.W.2d at 416 ("because the accused is denying his guilt, a factual basis must be established independent of his statements"). Thus, even if the defendant wants to plead guilty, there is no guarantee the court will accept the plea.

Furthermore, we find sections 910.3B(2) and 910.3B(3) are designed to protect the defendant's rights in the subsequent action and promote judicial efficiency respectively. Section 910.3B(2) precludes the admission of any evidence of the existence or amount of any award pursuant to section 910.3B(1) in any subsequent civil action based upon the same set of facts, and section 910.8 specifically offsets any subsequent civil award based on the same set of facts by any award pursuant to chapter 910. *See* Iowa Code § 910.8 (1997) ("any restitution payment by the offender to a victim shall be set off against any judgment in favor of the victim in a civil action arising out of the same facts or event"). Additionally, section 910.3B(3) comports with our prior pronouncements of issue preclusion. *See Ideal Mut. Ins. Co. v. Winker,* 319 N.W.2d 289, 297 (Iowa 1982) (a validly entered and accepted guilty plea precludes relitigation of essential elements of the offense in a civil case). While the defendant professes innocence, an *Alford* plea is only entertained after the "defen-

dant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Alford,* 400 U.S. at 37, 91 S.Ct. at 167, 27 L.Ed.2d at 171. Thus, there is no material difference between a plea which includes an express admission of guilt and an *Alford* plea, where the defendant has determined, given the evidence by the State, it is in the best interest to accept the punishment associated with the lesser charge. *Id.* However, the motivation behind the plea is of no consequence, rather the acceptance of the guilty plea is what is important. *See AID Ins. Co. (Mut.) v. Chrest,* 336 N.W.2d 437, 440 (Iowa 1983).

We find Klawonn's argument with respect to *Alford* pleas unpersuasive. Section 910.3B(3) does not result in a denial of due process.

## VI. Mandatory Award Under Section 910.3B.

 Klawonn argues the legislature's use of the word "shall" in section 910.3B(1) should be interpreted to give the sentencing court some discretion in imposing this award. Sections 910.3B(1) states,

In all criminal cases in which the offender is convicted of a felony ... [which] caused the death of another person, in addition to the amount determined to be payable and ordered to be paid to a victim for pecuniary damages, ... the court *shall* also order the offender to pay at least one hundred fifty thousand dollars in restitution to the victim's estate.

Iowa Code § 910.3B(1) (emphasis added).

 The word "may" can be interpreted to mean "shall" where the context evidences such an intent. *See State v. Berry,* 247 N.W.2d 263, 265 (Iowa 1976). However, while the rule may work one way, it does not work the other. The word "may" can mean "shall," but the word "shall" does not mean "may." The legislature made this clear in drafting the Iowa Code

when it said use of " 'shall' imposes a duty;" while " 'may' confers a power." *See* Iowa Code § 4.1(30)(a), (c) (1997). Additionally, we have interpreted the term "shall" in a statute to create a mandatory duty, not discretion. *See State v. Moyer,* 382 N.W.2d 133, 134–35 (Iowa 1986); *see also State v. Luckett,* 387 N.W.2d 298, 301 (Iowa 1986) (use of "shall" creates mandatory action unless context clearly indicates otherwise). Finally, in *Hansen v. Henderson,* we said

> "Sometimes courts are justified in interpreting the word 'shall' as 'may,' but, when used in a statute directing that a public body do certain acts, it is manifest that the word is to be construed as mandatory and not permissive. The uniform rule seems to be that the word 'shall,' when addressed to public officials, is mandatory and excludes the idea of discretion."

*Hansen v. Henderson,* 244 Iowa 650, 665, 56 N.W.2d 59, 67 (1952) (quoting *City of Newton v. Board of Supervisors,* 135 Iowa 27, 30, 112 N.W. 167, 168 (1907) (citations omitted)).

We conclude the context of section 910.3B(1) clearly indicates the award is mandatory once the offender's felonious actions result in the loss of human life. The use of the word "shall" in section 910.3B(1) was intended to create not merely the power to impose, but rather the duty upon the sentencing court to impose a restitution award payable to the estate of at least $150,000.

### VII. Conclusion.

We hold the award pursuant to section 910.3B does not constitute an excessive fine, nor violate notions of double jeopardy. Finally, the award does not violate procedural or substantive due process rights.

**AFFIRMED.**

All justices concur except SNELL, J., who concurs in part and dissents in part

and is joined by TERNUS, J., and CARTER and LAVORATO, JJ., take no part.

SNELL, Justice (concurring in part and dissenting in part).

I concur in the majority's opinion excepting for division III on excessive fines. I dissent from that division for the reasons stated in Justice Lavorato's dissent in *State v. Izzolena,* 609 N.W.2d 541 (Iowa 2000), where I joined his dissent. I would vacate that order and remand so that the district court could then determine the amount of restitution in a meaningful hearing.

TERNUS, J., joins this concurrence and dissent.