# In the Iowa Supreme Court

No. 25–1802

Submitted April 15, 2026—Filed May 8, 2026

In the interest of **J.B.** and **R.R.,** minor children.

**State of Iowa,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Lynn Poschner, district associate judge.

The Iowa Department of Health and Human Services seeks further review of a court of appeals decision affirming the juvenile court's order placing guardianship of the minor children with the foster parents. **Decision of Court of Appeals Vacated; Juvenile Court Judgment Reversed and Case Remanded.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant Attorney General, for appellant.

Jami J. Hagemeier and Nicole Garbis Nolan of Youth Law Center, Des Moines, attorneys and guardians ad litem for minor children.

**Christensen, Chief Justice.**

After terminating the parental rights of the children's parents, the juvenile court declined to transfer guardianship and custody of the children under Iowa Code section 232.117(3) (2025) to the Iowa Department of Health and Human Services (HHS) based on its disapproval of HHS's plan for the children's great-aunt in Tennessee to adopt them. It also declined to transfer guardianship and custody to the great-aunt, opting instead to declare the children's foster parents "fictive kin" and appoint them as the children's guardians. The State appealed, arguing Iowa Code section 232.117(3) requires the juvenile court in this situation to transfer guardianship and custody of the children to HHS unless HHS waives that right. We transferred the case to the court of appeals, which affirmed in a split decision.

On further review, we vacate the decision of the court of appeals, reverse the judgment of the juvenile court, and remand the case for entry of an order transferring guardianship and custody of the children to HHS. There is nothing discretionary about the statute's directive to transfer guardianship and custody of the children to HHS "if [HHS] had custody of the child[ren] at the time of the filing of the petition for termination of parental rights . . . unless [HHS] waives its priority." *Id.* § 232.117(3)(*a*). We also reiterate our recent ruling in *In re L.P.*, 32 N.W.3d 804, 815–18 (Iowa 2026), in which we held that only those individuals who maintained an emotionally positive significant relationship with the children or their family before the children's removal qualify as fictive kin under chapter 232.

## I. Background Facts and Proceedings.

Jacob and Rachel (pseudonyms) came to HHS's attention when Rachel tested positive for methamphetamine at birth, and they were removed from their

parents' custody shortly thereafter on December 4, 2024. At the time, Jacob had just turned one, and Mom admitted to HHS that both parents lacked stable housing and had used methamphetamine in his presence. Upon removal, the children briefly lived with a suitable other placement until that placement was deemed unsafe for the children on January 9, 2025. Since then, they have remained in the care of their foster parents, the Millers (pseudonym).

As part of its concurrent planning, HHS located the children's maternal great-aunt, Joan (pseudonym), in Tennessee as a potential adoptive home. On March 10, the juvenile court ordered an evaluation of her home under the Interstate Compact on the Placement of Children (ICPC), which subsequently approved Joan as a suitable home for the children in less than two months. Based on the parents' lack of progress, HHS's June permanency report recommended changing the permanency goal from parental reunification to termination of parental rights so that Joan could adopt the children. HHS also began conducting video visits between Joan and the children.

On June 17, the juvenile court conducted a permanency hearing and authorized the children's attorney and guardian ad litem (GAL)[1] "to travel out of state at state expense to visit the approved home in Tennessee (both time and travel costs) to fulfill her obligations to visit potential placements." It also adopted the case plan in HHS's June report and documented HHS's "recommended transition plan [to] include[] visits in Iowa between [Joan] and the children and also video-visits." Finally, the juvenile court directed the county attorney to institute termination proceedings.

---

[1]The same person served in both capacities, *see* Iowa Code § 232.89(4), but we refer to her as "GAL" for brevity.

In the meantime, Joan visited Iowa in mid-June for HHS-supervised visits with the children and continued their video visits upon her return to Tennessee. In August, the GAL visited Joan's home and reported her concerns with moving the children because she did "not believe that a relationship currently exists between" Joan and the children. The GAL requested that the juvenile court place the children in a guardianship with the Millers upon termination to facilitate the Millers' adoption of the children. HHS continued to recommend termination of parental rights for the purpose of relative placement so that Joan could adopt the children.

The termination hearing occurred over two days in September. Mom consented to termination and Dad did not attend, so the primary issue was who should serve as the children's guardian and custodian after termination. The GAL advocated for keeping the children with the Millers for adoption and presented expert testimony from a licensed independent social worker and mental health therapist about the general harm of moving children between caregivers. Notably, the expert had never met the children, Joan, the case manager, or the Millers.

HHS sought guardianship and reiterated its plan to place the children with Joan for adoption. On cross-examination, the case manager agreed with the GAL that the Millers could be considered fictive kin under Iowa Code section 232.117(3). The GAL wondered how HHS planned to "maintain [the children's] relationship [with the Millers] in any meaningful way if they were in Tennessee," and remarked, "Whereas if [the children] remain here and maintain a relationship, or -- a relationship is fostered with [Joan], they aren't suffering

tremendous harm, are they?" The case manager stressed the benefits of familial placement and Joan's ability to care for the children.[2]

Joan also testified about her plans to help the children through the transition process. On cross-examination, the GAL questioned how Joan could financially handle the transition process, which might require staying in Iowa "for months," given that Joan used a GoFundMe account to help finance her past travel to Iowa and other items for the children. Joan remarked, "I created a GoFundMe for family and friends that wanted to help out with me coming out here. I raised a total of 310 dollars."

The GAL probed why Joan did not ask sooner if she could come and meet the children, quipping, "You have no trouble asking for money, you have no trouble asking for people to fund your baby registry, but you couldn't ever once ask [HHS] if you could come and meet the children?"[3] Joan testified that she could not afford to "go back and forth and back and forth," but she could afford to take leave under the Family Medical Leave Act to assist with the children's transition to Tennessee once it was in place.

The juvenile court issued an order terminating both parents' rights and granting guardianship and custody of the children to the Millers on October 13. In doing so, it concluded that the statutory language of Iowa Code

---

[2]We recently expounded upon these benefits and how state and federal law have sought to incorporate them by codifying relative placement preferences in *In re L.P.*, 32 N.W.3d at 812–15.

[3]The GAL's harsh focus on the GoFundMe account as a potential reason not to place the children with Joan was undignified. As Joan candidly stated, "I don't know many people that could afford to go back and forth multiple times between states." This is especially so when a relative is unexpectedly asked to assume care of two young children who live in a distant state. Significantly, the GAL hired an expert who had never met any of the parties to testify and obtained State funding for the GAL's time and travel expenses to visit Joan's home in Tennessee after the ICPC had already approved Joan as a suitable placement. Perhaps those resources would have been better spent on travel expenses for Joan to help alleviate the GAL's concerns about Joan's bond with the children.

section 232.117(3) required it to "consider HHS first, conclude that HHS should not be appointed guardian and custodian, and then move through the list of placements in order of priority." Applying this framework, the juvenile court determined that transferring guardianship and custody to HHS was not in the children's best interests because HHS's plan for the children "shows reckless disregard for the children's mental health." It criticized HHS for failing to establish a relationship between Joan and the children sooner, proclaiming, "The risk that HHS is willing to take in order to place the children with a relative they do not know is unreasonable."

Moving down the priority list, the juvenile court also declined to grant Joan guardianship and custody despite finding "no reason to believe that [Joan] is not an acceptable caregiver for the children." It reasoned, "[Joan's] decision-making to not seek an introduction to the children until April, 2025, and not meet the children in person until June, 2025, and only when it was suggested by another party is questionable."[4] Further, the juvenile court explained the unlikelihood of Joan maintaining "a relationship between the children and their foster parents in Iowa, or any relatives in Iowa given the difficulty with [Joan] traveling to Iowa to meet the children." Finally, the juvenile court concluded that the Millers were

---

[4]This criticism of Joan was unwarranted in our view. Unlike the professionals and foster parents involved in this case, Joan was not familiar with the process when she stepped up as a relative placement for the children. Her willingness to do so should be commended, and her lack of knowledge regarding the process says more about the professionals involved in this case than it does about her. For instance, HHS or the GAL could have requested some form of visitation between Joan and the children in March when the juvenile court ordered her home study. As we have stressed before, "The transfer of a child's placement within juvenile court can be successfully accomplished 'and still show few or no long-term effects when it's done properly, slowly, and with the support of all of the adults in the child's life.' " *Iowa Dep't of Health & Hum. Servs. v. Iowa Dist. Ct.*, 27 N.W.3d 76, 78 (Iowa 2025) (quoting *In re K.D.*, 975 N.W.2d 310, 322 (Iowa 2022), *superseded by statute on other grounds*, 2022 Iowa Acts ch. 1098, § 45 (codified at Iowa Code § 232.102 (2023))).

fictive kin with "the closest relationship to the children at this time of anyone," and appointed them guardians and custodians of the children.

Neither parent appealed the termination of their rights, but the State appealed the juvenile court's guardianship decision. We transferred the case to the court of appeals. In a split en banc decision, the court of appeals concluded that Iowa Code section 232.117(3) gives HHS the highest priority in consideration among the listed categories of potential guardians but authorizes the juvenile court to select from any of those categories. Thus, it affirmed the juvenile court's decision. Two dissenting members of the court would have found that Iowa Code section 232.117(3) requires the juvenile court to place custody and guardianship with HHS following termination unless HHS waives that right. We granted the State's application for further review.

**II. Analysis.**

The State maintains that the juvenile court erred in its interpretation of Iowa Code section 232.117(3), as the statute required the juvenile court to appoint HHS as the children's guardian. We review the juvenile court's statutory interpretation for the correction of errors at law. *See In re L.P.,* 32 N.W.3d at 812.

When the juvenile court terminates the rights of both parents or the juvenile court finds that "guardianship and custody with the child's parents is not in the child's best interests," Iowa Code section 232.117(3) provides,

> [G]uardianship and custody shall be transferred for placement of the child in any of the following categories in the following order of priority:
>
> *a.* The department if the department had custody of the child at the time of the filing of the petition for termination of parental rights, or if custody with the department is necessary to facilitate the permanency or adoption goal, unless the department waives its priority.

*b.* An adult relative of the child, including but not limited to adult siblings or parents of siblings.

*c.* A fictive kin.

*d.* A child-placing agency or other suitable private agency, facility, or institution which is licensed or otherwise authorized by law to receive and to provide care for the child.

The statute's use of the word "shall" "imposes a duty" that is not discretionary. *State v. Flynn,* 13 N.W.3d 843, 847 (Iowa 2024) (quoting Iowa Code § 4.1(30)(*a*)). This is especially so because the term is "used in a statute directing that a public body do certain acts." *State v. Klawonn,* 609 N.W.2d 515, 522 (Iowa 2000) (en banc) (quoting *Hansen v. Henderson,* 56 N.W.2d 59, 67 (Iowa 1952)). And it is even clearer here given the statute's express limitation that the juvenile court "shall" transfer guardianship and custody to HHS "if [HHS] had custody of the child at the time of the filing of the petition for termination of parental rights, or if custody with the department is necessary to facilitate the permanency or adoption goal, *unless* the department waives its priority." Iowa Code § 232.117(3)(*a*) (emphasis added); *cf. SZ Enters., LLC v. Iowa Utils. Bd.*, 850 N.W.2d 441, 470 (Iowa 2014) ("[W]e are inclined to believe that the phrase 'unless the context otherwise requires' is a term of limitation designed to ensure that city utilities that do not furnish electricity are not inadvertently drawn into the statute.").

That the statute does not explain "how to consider the options[] other than in order of priority," as the juvenile court observed, further reinforces that this is not a discretionary statute. Rather, it is a mandate to transfer guardianship of the children to HHS absent HHS's waiver of its priority. Here, HHS had custody of the children when the termination petition was filed and did not waive its

priority to be appointed guardian following termination. Thus, the juvenile court should have appointed HHS as the children's guardian.

We recognize the GAL's worry that this interpretation disregards the children's best interests by forcing the juvenile court to appoint HHS as guardian even when that may not be in the children's best interests. *See Iowa Dep't of Health & Hum. Servs. v. Iowa Dist. Ct.,* 27 N.W.3d 76, 83–84 (Iowa 2025) (explaining that the paramount concern in transferring a child's placement within the juvenile court is the child's best interests); *see also* Iowa Code § 232.1. We also recognize the court of appeals' concern that this interpretation would force the juvenile court "to transfer custody [of] the children to an adult relative" whenever HHS waives its priority, even if the children "have no relationship with their adult relatives or none are safe caretakers." These concerns place the cart before the horse and overlook the statutory makeup of chapter 232.

To start, we struggle to imagine a situation in which HHS would waive its priority to guardianship without a willing and capable replacement guardian awaiting appointment. That would be a significant failure of the state agency tasked with protecting children from abuse and helping them achieve a stable home environment. *See* Iowa Code § 232.67. This is especially true considering HHS's ongoing obligations to finalize the children's adoption regardless of guardianship. *See generally* Iowa Admin. Code r. 441—200.3; *see also In re J.L.,* 973 N.W.2d 895, 911 (Iowa Ct. App. 2022) ("The [H]HS rules that guide the [adoption selection] process contemplate an in-depth analysis that balances the familial relations, the child's specific needs, and, in the end, the best interests of that child.").

Moreover, Iowa Code section 232.118 provides a mechanism for the juvenile court—on its own motion—or any other interested party to seek removal

of a court-appointed guardian. Significantly, it operates with the presumption that the guardian is acting in the children's best interests, as it places the burden on the moving party to establish that the "guardian failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge the guardian's duties in finding a suitable adoptive home for the child." *Id.* § 232.118(1)(*a*).

We also find support for this presumption that HHS acts in the children's best interests unless proven otherwise in Iowa Code section 232.102(1)(*b*)(2), which provides that once the court places legal custody of the children with HHS, it "shall give deference to the department's decision for placement of a child." And like Iowa Code section 232.118, the party opposed to the department's placement decision has "the burden to prove the department failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child." *Id.* § 232.102(1)(*b*)(2). Frankly, this presumption makes sense considering that we are applying it to the state agency responsible for Iowa's child protective services.

In practice, this means that HHS must at least be given the chance to act as guardian before the juvenile court can remove it for failing to act in the children's best interests. That was never the case here. If it was, and the GAL still had concerns about HHS's transition, the GAL could have moved to remove HHS as guardian and requested a stay in any placement change until the juvenile court could conduct a hearing on the motion. *See Iowa Dept' of Health & Hum. Servs.*, 27 N.W.3d at 84 ("[W]hile the statutory scheme in chapter 232 does not explicitly authorize the juvenile court to prohibit moving a child until after a hearing on the placement decision, such a temporary stay may be needed to protect the child's best interests when an interested party requests review of

the decision."). This process would have allowed the juvenile court to "focus on the process [H]HS used and the actions it took in reaching the placement decision and then determine whether those were unreasonable (or irresponsibly undertaken)—all with the best interests of the child[ren] in mind." *In re K.D.*, 975 N.W.2d 310, 320 (Iowa 2022) (quoting *In re J.L.*, 973 N.W.2d at 908), *superseded by statute on other grounds*, 2022 Iowa Acts ch. 1098, § 45 (codified at Iowa Code § 232.102 (2023)).

We now reverse the juvenile court's guardianship order and remand with instructions for it to appoint HHS as the children's guardian and custodian. Given the ongoing dispute between the GAL and HHS over the children's placement throughout this case, we also point the juvenile court to our recent opinion in *In re L.P.*, 32 N.W.3d at 818, should anyone perfunctorily seek to remove HHS as guardian. There, we interpreted "fictive kin" in chapter 232 "to draw a line between the people from whom the child may become separated upon HHS involvement . . . and the subsequent foster care that a child may then receive." *Id.* Accordingly, because the Millers had no connection to the children before becoming their foster parents, they do not qualify as fictive kin and should never have been appointed guardians under Iowa Code section 232.117(3). *See In re L.P.*, 32 N.W.3d at 818.

Foster parents play a crucial role in providing much-needed care and stability to children who have been removed from their parents. But this is the second juvenile case before us in recent months because a juvenile court prioritized foster parents over HHS's attempts to place children with relatives. *See id.* at 808–11. Therefore, we conclude with this reminder:

> The foster care system is designed to provide temporary, not permanent, homes for children. This is to facilitate the goals of reunification with the parents or placement in a relative's home. We

certainly recognize the bond that is developed between a foster parent and child. We also recognize that a bond between the foster parents and the child signifies a good foster home. However, if every foster parent who formed a bond with a child were given enforceable rights to the children, it would upset the goals of the system.

*In re E.G.*, 745 N.W.2d 741, 744 (Iowa Ct. App. 2007).

**III. Conclusion.**

For these reasons, we vacate the decision of the court of appeals, reverse the juvenile court's guardianship order, and remand for the entry of an order transferring guardianship and custody of the children to HHS.

**Decision of Court of Appeals Vacated; Juvenile Court Reversed and Case Remanded.**